```
 1                       UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF KENTUCKY
 2                       CENTRAL DIVISION AT LEXINGTON

 3                                   - - -
     UNITED STATES OF AMERICA,        .   Case No. 5:18-CR-00020
 4                                    .
               Plaintiff,             .
 5                                    .   Lexington, Kentucky
               - v -                  .
 6                                    .   Monday, July 30, 2018
     SCOTT W. SULIK,                  .   1:57 p.m.
 7                                    .
               Defendant.             .
 8                                   - - -

 9                  TRANSCRIPT OF MOTION PROCEEDINGS
                 BEFORE THE HONORABLE JOSEPH M. HOOD
10                 UNITED STATES DISTRICT COURT JUDGE

11                                   - - -

12

13   For the United States:      ANDREW T. BOONE, ESQ.
                                 Assistant U.S. Attorney
14                               United States Attorney's Office
                                 260 West Vine Street, Suite 300
15                               Lexington, Kentucky  40507

16   For the Defendant:          RACHEL DIANE YAVELAK, ESQ.
                                 Oeltgen & D'Ambruoso, PLLC
17                               120 North Mill, Suite 300
                                 Lexington, Kentucky  40507
18
     Court Reporter:             LINDA S. MULLEN, RDR, CRR
19                               Official Court Reporter
                                 101 Barr Street
20                               Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25
```

1          (Proceedings in open court, July 30, 2018, 1:57 p.m.)
2          THE COURT:  Madam Clerk, call the next matter on, please.
3          THE CLERK:  Yes, Your Honor.  Lexington Criminal Action
4    Number 18-20, United States versus Scott W. Sulik, called for a
5    motion hearing.
6          THE COURT:  Let the record reflect that the United States
7    is present in the courtroom by counsel; that the defendant is
8    present in the courtroom with counsel.
9          Ready to proceed, Mr. Boone?
10         MR. BOONE:  Yes, Your Honor.
11         THE COURT:  Ms. Yavelak?
12         MS. YAVELAK:  Yes, Your Honor.
13         THE COURT:  You have a motion to continue the trial.
14         MS. YAVELAK:  Yes, Your Honor.
15         THE COURT:  Would you like to discuss that with me?
16         MS. YAVELAK:  Judge, I've been working on getting access
17   to a black computer, as well as to the forensic --
18         THE COURT:  As a what?
19         MS. YAVELAK:  A computer with a black connection so I can
20   look at certain websites without being arrested.
21         THE COURT:  We would hate to have that happen to you.
22         MS. YAVELAK:  I would too, Judge.  The problem, obviously,
23   which was mentioned in our first motion, is the FBI office in
24   Lexington had moved.  And I don't know if they've now got it
25   yet, but had not got their network set up so that was possible.

1        The forensic image and the computer made it to Louisville
2   from the Capitol Police in mid July.  The expert that I got
3   ahold of in May, the first time they can look at the computer
4   is in August.  I know they have reached out to the Louisville
5   office to set up that time.
6        Mr. Boone, I know, has been doing everything in his power
7   to get me the access and the ability to take a look at the
8   discovery, it's just I think part of it has been the arresting
9   authority that has made this difficult, as well as the FBI's
10  office in Lexington's move.  So at this point --
11       THE COURT:  Where have they moved?
12       MS. YAVELAK:  I think still in Lexington, but I think he
13  knows the exact --
14       MR. BOONE:  The new FBI office is off Newtown Pike.
15       The issue is Ms. Yavelak would like access to a covert
16  computer to conduct some internet research I think.  I don't
17  want to speak out of turn.  I've been trying to facilitate
18  that.  I don't think that the government's obligated to provide
19  that, it's certainly not information in our custody, it's out
20  on the internet.  But I've been trying to facilitate that.
21       With the move, the FBI's had a little bit of logistical
22  difficulty getting its covert internet line up and running, so
23  we've just been waiting on that.  That's been the only law
24  enforcement agency I found that's been willing to provide that
25  service.  So we're just waiting on that.

1        THE COURT:  Help me.  Why do we need this covert line,
2   Ms. Yavelak?
3        MS. YAVELAK:  Judge, one of the cases that I worked on
4   after the Walsh Act had been passed was the Mucci case.  And
5   from being involved with the experts that we had in that case,
6   I learned there's quite a bit to be learned from looking at the
7   websites that some of the photos identify or we've been able to
8   track down the websites.
9        In that case, I was able to discover that most, if not
10  all, of those pictures were not child porn.  So I've discovered
11  that there is a very important matter of tracking down the
12  pictures.  And I've seen the images, two of them have websites
13  attached to them to take a look if they actually are.  A lot of
14  times there's disclaimers and that, documents attached that say
15  they are not.  I've learned not to believe what my eyes always
16  tell me on those.  Because I know when I first looked at the
17  32 pictures involved in the other case, I thought they all
18  were.  And by the time I was done, I didn't think there was one
19  under 25.
20       So that's a lot of times where I start.  I didn't wait for
21  the black computer to be able to get that, I went ahead and got
22  an expert.  The problem is with the Capitol Police and getting
23  the hard drive and the forensic image down here until July.
24       So I've been trying to get that.  I know Mr. Boone has
25  been trying to facilitate that.  But until mid July that part

1  wasn't even here.  My expert, who I've talked to and had agreed
2  to since, I think around May 1st, May 8th, the first time they
3  can examine it is August 13 and 14.  I know they're trying to
4  set it up with the Louisville office, and I still want to do
5  the research on the websites just because, from the practice
6  that I've done, I've learned I can learn quite a bit from that.
7       THE COURT:  Okay.  Mr. Sulik, do you have any thoughts on
8  the matter?  You're entitled to a speedy trial, but you're also
9  entitled to have your counsel be prepared to represent you.
10 It's a choice that you need to make.
11      THE DEFENDANT:  I take the advice of my attorney.
12      THE COURT:  So you want to have a counsel properly
13 prepared?
14      THE DEFENDANT:  Yes, sir.
15      THE COURT:  Well, that's a smart thing to do.
16      When do you think you'll be ready to go, Ms. Yavelak?
17      MS. YAVELAK:  Judge, my understanding is if Mr. Struttman
18 can get ahold of the gentleman in Louisville, they can review
19 it August 13 and 14, however long it takes them there.
20      The other question is when the computer will become
21 available for me here in Lexington to take a look at the
22 websites and do the research I need to do.
23      I do disagree that it's not the government's -- I think
24 the government does have to facilitate it because of the Walsh
25 Act, which prevents me from going on my own computer at the

1   office and doing that research.

2        THE COURT:  You may be right.

3        Mr. Boone, what do you say about that?

4        MR. BOONE:  I would have to look at that issue.  You know,

5   information about websites that's out on the web, I wouldn't

6   really consider within the scope of the -- within the

7   government's possession.

8        THE COURT:  Well, yeah, but that's not the issue.  She

9   doesn't want to go to jail.  Funny thing about defense

10  attorneys.

11       MR. BOONE:  I get that.  Your Honor, I still don't

12  completely understand the relevance of the research that she's

13  described here.  But like I said, I've been trying to

14  facilitate it.  I don't -- I can't provide that today.  I'm

15  hopeful within the next few weeks they will have that line up

16  and running and it's something that I can provide.

17       THE COURT:  Okay.  The trial is set, as it stands now, for

18  the 14th of August.  By the 14th of August, as it stands now,

19  counsel will advise me as to what she has received and what has

20  been able to be reviewed.

21       MS. YAVELAK:  Yes, Your Honor.

22       THE COURT:  Then by the 21st of August, you should advise

23  me whether she's ready to go to trial, assuming she's received

24  what she needs to know, and then we'll set a trial date.

25       The time between the 14th of August until the time she

1   announces ready will be excludable under the Speedy Trial Act
2   provision, that the defendant's right and the government's
3   right to a speedy trial is outweighed by the defendant's right
4   to have a properly prepared attorney.
5        How's that sound, Mr. Boone?
6        MR. BOONE:  Fair, Your Honor.  Thank you.
7        THE COURT:  Ms. Yavelak?
8        MS. YAVELAK:  Thank you, Judge.
9        THE COURT:  Mr. Sulik, you okay with that?
10       THE DEFENDANT:  Yes, sir.
11       THE COURT:  All right.  And then we'll pick a trial date
12  sometime around the 21st, hopefully.
13       The defendant is remanded to the custody of the marshal.
14       (Proceedings concluded at 2:05 p.m.)
15
16                       C E R T I F I C A T E
17
18        I, Linda S. Mullen, RDR, CRR, do hereby certify that
19  the foregoing is a correct transcript from the record of
20  proceedings in this above-entitled matter.
21
22
23  /s/Linda S. Mullen              August 2, 2019
    Linda S. Mullen, RDR, CRR       Date of Certification
24  Official Court Reporter
25