UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,      ) Lexington Criminal
                               ) Action No. 18-20
          Plaintiff,           )
                               ) At Lexington, Kentucky
-vs-                           )
                               )
SCOTT W. SULIK,                ) February 6, 2019
                               ) 9:45 a.m.
          Defendant.           )


TRANSCRIPT OF PRETRIAL CONFERENCE HEARING PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE


Appearances of Counsel:

On behalf of Plaintiff:      ANDREW T. BOONE, ESQ.
                             Assistant U.S. Attorney
                             260 West Vine Street
                             Suite 300
                             Lexington, Kentucky  40507

On behalf of Defendant:      PAMELA S. LEDGEWOOD, ESQ.
                             271 West Short Street
                             Suite 403
                             Lexington, Kentucky  40507

Court Reporter:              PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814


Proceedings recorded by mechanical stenography,
transcript produced by computer.

1     (Whereupon, the Pretrial Conference Hearing

2  proceedings commenced on Wednesday, February 6, 2019, at

3  9:45 a.m., on the record in open court, as follows.)

4                THE COURT:  All right.  Thank you.

5                Madam Clerk, if you would call the matter

6  scheduled for 9:45, please.

7                THE CLERK:  Yes, Your Honor.

8                Lexington Criminal Action Number 18-20,

9  United States of America versus Scott W. Sulik, called for

10  pretrial conference.

11                THE COURT:  Thank you.

12                If counsel would state their appearances,

13  please.

14                Mr. Boone, good morning.

15                MR. BOONE:  Good morning, Your Honor.

16                Andy Boone for the United States.

17                THE COURT:  Thank you.

18                Ms. Ledgewood, good morning.

19                MS. LEDGEWOOD:  Good morning, Your Honor.

20                Thank you.

21                Pam Ledgewood on behalf of Mr. Scott Sulik who's

22  now standing to my right.

23                THE COURT:  All right.  Thank you.

24                MS. LEDGEWOOD:  Yes, sir.

25                THE COURT:  This matter is scheduled for a final

1    pretrial conference at the request of the parties.

2              I do want to take a moment and address any

3    issues that the parties would like to address.

4              And I also note that the parties have submitted

5    the proposed joint statement of the case.  United States

6    has tendered its ex parte witness and exhibit list.

7              And the parties have submitted their proposed

8    jury instructions in the case.  It looks like for the most

9    part the parties are in agreement as to the instructions

10   to be given.  There are a couple I do want to talk with

11   the parties about here in a moment.

12             And then we've also had United States' notice of

13   404(b) evidence that it intends to offer during the trial.

14             Let me -- let me begin with the issues that you

15   would like to discuss.

16             Mr. Boone, do you have some issues to cover

17   today?

18             MR. BOONE:  Your Honor, beyond what I've

19   submitted, I don't have any issues to raise.  I think

20   we'll probably take those in due course.

21             I think Ms. Ledgewood might have a matter or two

22   that she would like to raise.

23             THE COURT:  All right.  Ms. Ledgewood.

24             MS. LEDGEWOOD:  Thank you, sir.

25             With the Court's permission, could we begin with

1   the most -- or at least for my standpoint, the substantive

2   issue, the 404(b) notice?

3               THE COURT:  Yes, ma'am, certainly.

4               MS. LEDGEWOOD:  Thank you, Your Honor.

5               First of all, let me -- there is an objection to

6   it but not strictly on legal grounds.  It is timely, both

7   in connection with Your Honor's standing order, which I

8   believe says that it should be -- that a reasonable time

9   to give defense notice of 404(b) is a week.  It was filed

10  yesterday, and, moreover and more importantly, it has

11  been -- this particular image that is referenced in the

12  notice was -- has been in the discovery from the very

13  beginning.

14              And the United States and I, in an effort to

15  conduct this trial as smoothly and as expeditiously as

16  possible, have been conferencing a lot, talking a lot,

17  about scheduling matters and procedural matters.  And so I

18  knew a couple of weeks ago that the government was going

19  to file this motion.  So it is certainly timely, which I

20  will say it is.

21              And I will also in conjunction with that tell

22  the Court that all Jencks Act material that I'm aware of

23  has been turned over to the defense.  Yesterday the

24  government was kind enough to turn over the grand jury

25  testimony, not only involving this case, but in an

1   abundance of caution they provided to me the grand jury

2   testimony from the previous case, which Your Honor has

3   made clear to Mr. Sulik we will not be discussing in this

4   trial, but they did include that too.  Mr. Sulik is not

5   aware of this because this happened late yesterday

6   afternoon.

7          So discovery is in full compliance with

8   everything that I'm aware of.  And, again, I want to thank

9   Mr. Boone for that, for his help.

10         The objection that Mr. Sulik has to the 404(b)

11  evidence is quite simple and direct.  He simply maintains

12  that it is not relevant to the charge that he is going to

13  be tried for next Tuesday and Wednesday.

14         This is -- this particular image is, I believe,

15  quite properly classified by the government as child

16  erotica, but the presence of child erotica Mr. Sulik --

17  one image of child erotica Mr. Sulik believes is not

18  relevant to whether the elements of the statute that he is

19  charged with violating, whether -- whether there's

20  sufficient evidence to find guilt beyond a reasonable

21  doubt on that.

22         The -- he -- the government references and in

23  the -- and I had actually looked at these cases before.

24  So, again, the government and I have been reviewing the

25  same -- general same case law I think.

1          But I don't believe respectfully that it is a

2  material issue in this case whether Mr. Sulik does or does

3  not have a sexual interest in children.  It's whether the

4  statutory elements are met.

5          I would concede that his argument would not

6  be on as strong a ground if the images recovered during

7  the forensic analysis had consisted hypothetically of

8  200 images of child erotica and three images of what would

9  be considered contraband.

10          So it's simply a relevance objection.  I don't

11  see how it could be prejudicial in the sense of

12  inflammatory.  It's certainly not inflammatory.  We're

13  not saying that.  So that is the basis of that objection,

14  Your Honor.

15          THE COURT:  All right.

16          MS. LEDGEWOOD:  Thank you.

17          THE COURT:  As I understand the government's

18  position, it's seeking to introduce what I'll describe as

19  photograph number 2 that was taken from a cell phone to --

20  really for two reasons, either as 404(b) evidence to

21  establish absence of mistake and also to establish

22  knowledge.

23          And the relevancy question would be under the

24  case cited, the United States versus Guy, which indicates

25  that child erotica is material, it would be probative of a

1    sexual interest in children.

2             The United States, I believe, also asserts that

3    even if the Court wouldn't consider this under 404(b) as

4    other acts evidence essentially, that it would be

5    res gestae.  It's evidence that was -- would have been

6    downloaded or obtained by the defendant during the course

7    of the prohibited conduct to establish knowledge, which is

8    an element that must be met in the case.

9             Now, there may be other reasons, Mr. Boone, but

10   as I look through your motion, it would appear to be the

11   primary points.

12            Do you agree, or would you like to further

13   respond?

14            MR. BOONE:  I agree with that, Your Honor.  And

15   I'm going to concede for purposes of this argument that

16   the image is not in and of itself contraband.  I think

17   it's borderline, and it may well be that when we fire it

18   up at trial, we'll make a different determination.  But

19   for purposes of this argument, and just taking a belt and

20   suspenders approach and arguing that it is 404(b)

21   evidence, and that it is admissible admitted as res gestae

22   evidence, it is a probative -- it is a relevant and

23   material issue at trial whether Mr. Sulik knowingly

24   possessed contraband images, and those images were located

25   on two different devices.  What I refer to as photos 1, 2,

1   and 3 were located on a phone, and what I refer to as

2   photo 4 was located on a computer.

3            Now, I cited United States versus Hentzen, which

4   is a Sixth Circuit case that ruled that child erotica

5   photograph was not admissible as 404(b) evidence.  And I

6   found the government's argument in that case to be

7   circular because the erotica photo -- or, rather, the

8   material, I think it was a video, the cartoon video that

9   it found was located in the same spot, same location as

10  the contraband images.

11           So the Sixth Circuit held you can't -- the

12  government could not point to a cartoon in the same

13  location as the contraband photos as evidence of knowing

14  possession of the contraband because it's a circular

15  argument.  We would be arguing knowledge of one equated to

16  knowledge of the other when really it's of the same issue.

17           Here we have the erotica photograph on the

18  phone, and we have independent evidence that Mr. Sulik

19  possessed and used a phone, and we have an erotica -- and

20  we have a contraband image on the computer.

21           So my argument is that evidence that he

22  knowingly possessed the erotica image on the phone is

23  probative of his knowing possession of the image on the

24  computer.

25           Separately, evidence at trial will establish

1   that -- again, there were three photographs on the phone,

2   two contraband and one erotica image.  Evidence at trial

3   will establish that the two contraband photos were

4   downloaded, I believe, in October, October 2017.  I don't

5   have the exact date here in front of me, but that's my

6   recollection.

7           The erotica photograph I believe was downloaded

8   in November.  Again, I don't have the exact date, but I do

9   know that it's approximately six weeks later.

10          So that's -- that tends to negate any defense

11  that the first two photographs were download by mistake.

12  If Mr. Sulik downloaded the two contraband images in

13  October and then downloaded another photograph that's

14  probative of a sexual interest in children approximately

15  six weeks later, that tends to establish that that first

16  download was mistaken.

17          So that's our argument.

18          THE COURT:  All right.  Would the defendant's

19  argument be stronger here if there were 200 images in

20  question rather than just three?

21          MR. BOONE:  No, Your Honor.  I think it -- the

22  small number of images here actually weighs in favor of

23  the admission of the fourth photograph.  It's much

24  simpler --

25          THE COURT:  That's my point.  Wouldn't the

1  defendant's argument be stronger if you had more images

2  rather than less images because of the issue of intent

3  here?

4            MR. BOONE:  Yes, I think we're in agreement on

5  that.  It's much -- it's a much easier defense case to

6  claim that three images were downloaded mistakenly as

7  opposed to 200.  So the smaller number of images we have

8  the more material the issue of knowledge and absence of

9  mistake becomes.

10           THE COURT:  All right.  All right.  Thank you.

11           Ms. Ledgewood, thank you.

12           Now, typically -- well, I have a couple of other

13  questions.  Typically we'd be looking at final

14  admissibility of 404(b) evidence during trial because the

15  Court could consider the evidence presented by the

16  parties.  But in this particular matter this would -- I

17  would expect that this would be a fairly brief trial with

18  just a couple of witnesses presented, and the only issues

19  would involve the admissibility of photographs.  Now, I

20  have not seen any of these photographs of course, but they

21  have been described, and the parties don't seem to be in

22  disagreement with regard to 1, 3, and 4.  1 and 3 being on

23  the same phone that the child erotica image is also

24  contained, and then 4 being, I think, a ThinkPad.  I think

25  that's the way it's described in the brief.

```
 1              When -- when a Court considers this under
 2   404(b), of course, the government has two options.  The
 3   government can argue res gestae, which would be relevant
 4   to the underlying offense; and, therefore, would not be --
 5   the defendant, therefore, would not be necessarily
 6   entitled to a limiting instruction, or it could be
 7   addressed under 404(b) if that's the government's choice,
 8   if it seeks to introduce this evidence as acts of -- or
 9   other acts evidence under 404(b) of the Federal Rules of
10   Evidence.
11              And if that's the case, as it appears to be
12   here, based upon the notice that's been filed, then the
13   Court would go through an analysis, and it's really set
14   out in United States versus Merriweather.
15              The first issue in the case would be whether the
16   parties dispute the evidence itself.  And in this case the
17   parties don't dispute the evidence, and the defendant does
18   not contend that notice was not timely provided.
19              Therefore, the first issue, first real issue in
20   the case, would be relevance.  And in this particular
21   matter the United States has demonstrated to the Court
22   satisfaction relevance in terms of the issue of knowledge
23   in the case.  It does appear based upon all the filings
24   that have been made that the defendant's position will be
25   either he did not possess the phone, it was not his phone,
```

1    or he did not know that the images were on the phone.  And

2    this additional image would be further indication of his

3    knowledge and also intent.

4            And those are two issues that -- for which

5    evidence may be offered under 404(b) for those limited

6    purposes.

7            The next question would be whether the evidence

8    would be more prejudicial than probative under Rule 403 of

9    the Federal Rules of Evidence.

10           In this particular case based upon the

11   descriptions that have been provided, it would not appear

12   that this particular photo, which I'll refer to as

13   photo 2, would be more prejudicial than probative.  It's

14   not of the same nature as the other photos that the

15   government intends to produce in the case that have been

16   described as 1, 3, and 4.  And it would appear to have

17   relevancy in the case and would withstand a challenge

18   under 403 as being -- as not being more prejudicial than

19   probative.

20           And the final question would become a limiting

21   instruction and whether a limiting instruction should be

22   given.  And the Court would be inclined to give a limiting

23   instruction in this case if requested based upon the

24   United States' intent to introduce this under 404(b) as

25   opposed to seeking to introduce the evidence as evidence

1   that would be res gestae inextricably intertwined with the

2   allegations in the case.

3           While it certainly could meet that definition,

4   I'm not going to make that final determination at this

5   time because of the government's intended limited use of

6   the photograph.

7           And so I will overrule the objection at this

8   point.

9           Now, of course, a preliminary ruling by the

10  Court akin to a motion in limine ruling, would not be a

11  final determination, of course.  It could be revisited

12  when the evidence is offered during trial, and the parties

13  may, of course, approach the bench if there is further

14  discussion about this particular point on relevancy or

15  whether the evidence is more prejudicial than probative,

16  and also with regard to the issue of a limiting

17  instruction.

18          I do note for the record that the limiting

19  instruction that has been approved by the Sixth Circuit is

20  contained in the pattern jury instructions, 7.20, which I

21  think has been referenced in the parties' proposed jury

22  instructions, and that would be the form instruction that

23  typically the Court would give.

24          Now, I will ask the parties if you'd like to

25  tailor that instruction to fit the facts of this

1  particular case, then you can certainly do so, and you can

2  tender that instruction to me either in advance of trial

3  or at the time that the evidence is being offered in the

4  case.

5          But at this point it would appear to be relevant

6  based upon the description that has been provided.  It

7  would not be -- it would not be more prejudicial than

8  probative.  And, of course, the Court could give a

9  limiting instruction if requested.

10         MS. LEDGEWOOD:  Thank you, Your Honor.

11         THE COURT:  Also, in looking at the parties'

12  pretrial filings, I typically tinker a little bit with the

13  proposed joint statement of the case, but this is really

14  along the lines of what I typically would give, and most

15  of the time the attorneys provide me with way more than I

16  ever give in a case.  And so I do appreciate the fact that

17  after a number of years that folks are starting to catch

18  on with what is needed in terms of a proposed statement of

19  the case.

20         In looking at the other materials that have been

21  submitted, I would anticipate that in this particular case

22  that, at least with respect to the United States' proof,

23  that we may be able to complete the proof either the first

24  evening or perhaps the beginning of the second day of

25  trial.

```
 1              The parties generally agree with that
 2   assessment --
 3              MR. BOONE:  Yes, sir.
 4              THE COURT:  -- Mr. Boone?
 5              MR. BOONE:  I do, Your Honor.
 6              THE COURT:  Ms. Ledgewood, of course, that
 7   doesn't limit you in terms of your cross-examination.
 8   This's just in terms of trying to figure out when I'd be
 9   able to get draft jury instructions to you and things of
10   that nature.  I'm going to try to do that sooner rather
11   than later, and I may be able to get you a draft set of
12   instructions on the morning of trial.
13              So what I'm going to do is I'm going to look at
14   what you've submitted.  I tend to be over-inclusive when I
15   do that.
16              MS. LEDGEWOOD:  Yes, sir.
17              THE COURT:  So please keep in mind that I
18   haven't heard any of the evidence yet, I haven't seen the
19   discovery, and so I'm going based on what the parties have
20   tendered to me, and what I would expect would be presented
21   in the case.
22              And so those will certainly be subject to
23   modification, but I will try to get you those instructions
24   early so you can be looking at those earlier rather than
25   at the very last minute --
```

1              MS. LEDGEWOOD:  Thank you, sir.

2              THE COURT:  -- when you're pressed.

3              MS. LEDGEWOOD:  In that connection, that is why

4   my proposed jury instructions I reference both

5   instructions; if the defendant does testify and if the

6   defendant doesn't.

7              And just as a matter of professional courtesy, I

8   always think it's helpful to both the United States and to

9   the Court for scheduling and timing to have a pretty good

10  idea whether the defendant is going to testify.  I'll tell

11  you that Mr. Sulik is still privately conferencing with me

12  that weigh his options.

13             THE COURT:  All right.

14             MS. LEDGEWOOD:  And so as of today I'm not able

15  to give that information, but --

16             THE COURT:  No, that's fine.  And that sometimes

17  is a decision that's made only after all the government's

18  case has been --

19             MS. LEDGEWOOD:  Yes, sir.

20             THE COURT:  -- heard by the defendant --

21             MS. LEDGEWOOD:  Yes, sir.

22             THE COURT:  -- obviously.  So he's not required

23  to make that determination.

24             But the other practice I follow is if you ask me

25  to do it, if you would like to have a conference at

1  sidebar, to discuss advantages or disadvantages.

2  Sometimes counsel will ask me to do that, and I can

3  certainly do that.

4           MS. LEDGEWOOD:  And I can tell you that I

5  believe that we will be taking Your Honor up on that --

6           THE COURT:  All right.

7           MS. LEDGEWOOD:  -- at the appropriate time.  If

8  I had to predict now, I would say we would.

9           THE COURT:  All right.  Let's see, I think there

10  may have been one other -- I may have improperly referred

11  to the instruction on 404(b) evidence.  It's 7.13 rather

12  than 7.20.  I think 7.20 may have been referenced, and the

13  reason I had marked that was it relates to the statement

14  of the defendant.

15           And, as I understand, the United States will be

16  seeking -- or will be offering proof in the case that

17  would indicate that the defendant denied that the phone

18  was his rather than made an admission to be used against

19  him.

20           Is that correct?

21           MR. BOONE:  That's correct, Your Honor.

22           THE COURT:  All right.  So it may be that that

23  particular instruction, 7.20, may not apply in this

24  particular case, because that essentially tells the jury

25  that they should not return a guilty verdict based upon

 1  the defendant's statement standing alone, and I don't

 2  think that would fit here.  There may be a modified

 3  instruction that might be more appropriate.  But I'll just

 4  call that to your attention.  I may not include that at

 5  this point, but if it does become relevant, of course,

 6  I'll certainly --

 7          MS. LEDGEWOOD:  Thank you.

 8          THE COURT:  -- add that to the set of

 9  instructions.

10          All right.  Let me look through my notes and see

11  if we have any other issues or questions.

12          Let me just briefly again go through the

13  procedures that I follow in selecting the jury.

14          I typically will spend about an hour, sometimes

15  less depending on the case, with my part of questioning

16  the potential jurors in the case.  And I'll go through

17  issues such as what the claim in the case is, make sure

18  that the jurors don't know the attorneys on a personal

19  basis or the defendant or any agent that might be -- or

20  witness that might be called in the case.

21          Mr. Boone, do you want me to identify your

22  potential witnesses to the jury, or do you want to do that

23  yourself?

24          MR. BOONE:  The Court's preference.  I will be

25  happy to do it myself, or if the Court prefers, that's

1   fine too.

2          THE COURT:  All right.  Sometimes that's all the

3   government asks, so I don't want to eliminate your

4   questions entirely.  So I'll let you identify your

5   witnesses for the jury.

6          And, again, I'll cover some of the basics in

7   terms of civil versus criminal cases and the burden of

8   proof.

9          And then the two things that I ask you not to do

10  is not to ask for promises from the jury.  In other words,

11  if I prove this, will you promise me that you will return

12  a verdict in my favor?  I don't think it's appropriate to

13  ask for promises.

14         And I ask you not to argue the case during

15  voir dire and also during the opening statement.  If you

16  can avoid that, it shouldn't a -- shouldn't be a problem.

17         I also suggest, but don't require, that you

18  avoid questions that have been asked and answered.

19  Sometimes it's necessary to follow up to make sure that

20  you've heard the juror's answer correctly.  But just keep

21  in mind that you do have limited time in terms of your

22  voir dire.  So if you spend all of that time asking things

23  that have been already covered, you may run out of time.

24  So I just suggest that you avoid that if you can.

25         I do give you time after I finish to ask any

1    questions of the jury with those exceptions that I've just

2    noted.

3           And then I'll call you up to the bench to

4    exercise any challenges for cause.  And after we've gone

5    through challenges for cause, we'll call two panels of

6    jurors.  The first panel is the main panel.  There will be

7    28 jurors in the main panel, and the second panel will be

8    for our alternate.  And because of the short duration of

9    this trial, at least what's expected, I would seat one

10   alternate.  So there will be a panel of three for the

11   alternate.

12          Now, from that first panel of 28, the

13   defendant has 10 peremptory challenges to exercise, the

14   United States has six, and that's what gets us down to

15   our 12.  They are blind challenges.  So, in other words,

16   after we go through the challenges, we've selected the two

17   panels, and we take a recess, you'll be able to exercise

18   your challenges against those two panels.

19          The first 12 called but not stricken would be

20   the main panel in the case.  And the first juror called

21   from the three alternates, potential alternates, would be

22   the alternate that would be seated in the case.  So each

23   of you get one strike against the panel of three.

24          And we will then seat those -- what will be

25   13 jurors.  Of course, the first 12 will be the main

1    panel.

2            I generally am able to get through the jury

3    selection before the lunch break, and generally we're able

4    to go through opening statements.

5            And, Ms. Ledgewood, if for any reason you want

6    to reserve your opening statement until after the close of

7    the government's case, you can do that.

8            MS. LEDGEWOOD:  Fine.

9            THE COURT:  You just need to let me know, and

10   I'll modify the preliminary instructions that I give if

11   that's your choice.

12           And I will give you the draft preliminary

13   instructions, as well as the final version of the

14   statement of the case on the morning of trial.

15           MS. LEDGEWOOD:  May I --

16           THE COURT:  Yes.

17           MS. LEDGEWOOD:  -- give the Court some

18   information right now?

19           THE COURT:  Yes, ma'am, certainly.

20           MS. LEDGEWOOD:  Absent some -- some drastic

21   event, which I don't anticipate, I would like to defer

22   voir dire.  I've done several hundred trials over the

23   years, Your Honor, and I find voir dire goes best when

24   judges conduct it.

25           THE COURT:  All right.

```
1              MS. LEDGEWOOD:  So if that -- unless, I'd like
2    to reserve the right to change my mind at the last minute.
3              THE COURT:  Certainly.
4              MS. LEDGEWOOD:  But I don't think that's going
5    to happen.  So if that's agreeable to the Court --
6              THE COURT:  Certainly.
7              MS. LEDGEWOOD:  -- I would prefer to let
8    Your Honor conduct voir dire.
9              THE COURT:  Another alternative I'll give you is
10   if after I've gone through the questions, if you think
11   there's something I've left out, and you would prefer that
12   I ask it, you can give me the question, and I'll then do
13   the follow up with the --
14             MS. LEDGEWOOD:  Thank you, sir.
15             THE COURT:  -- jury if that's your preference.
16             MS. LEDGEWOOD:  Yes.
17             MR. BOONE:  That sounds reasonable.
18             THE COURT:  You want to do the same thing,
19   Mr. Boone?
20             MR. BOONE:  Sure.
21             THE COURT:  And that way I'll just include your
22   two potential witnesses, and then I'll call you up to
23   sidebar for any follow-up questions that you think might
24   be appropriate.
25             And if I screw those up for some reason and if
```

1  you feel like you need to ask some questions, I'll give

2  you a chance to do that as well if we were to get to that

3  point.

4        All right.  So we'll follow that approach then

5  in selecting the jury in the case.

6        MS. LEDGEWOOD:  And once Your Honor has

7  completed your list, I have a couple of more minor matters

8  I'd like to bring up.

9        THE COURT:  All right.  I think I've -- unless

10 you-all have questions about the selection process, I was

11 really finished going over that.

12        I'm assuming we are going to be in courtroom B

13 downstairs.

14        And, Mr. Boone, I know you've used that

15 courtroom before.  You may want to check and make sure

16 that the equipment that you're using sync up.

17        And because the case will involve images of

18 children, I want to make sure that the jury is able to see

19 what's being displayed on the screens, but I don't want

20 that to be available for the public to see.  So I want the

21 parties to be able to see those screens, but not the --

22 not the public.  And so we'll make sure that that's the

23 case.  And it may be -- I think there's some -- I'll check

24 with our IT department.  I believe there may be some

25 screens that can be put over your computer that will allow

1   you to see your screen but will block out images to be

2   viewed from other angles.  So I'll check on that this

3   afternoon.

4          You-all are familiar with my procedures on

5   movement in the courtroom.  So I'm not going to waste the

6   time to go through those matters, but if you do have

7   questions, of course, you can raise those now or on the

8   morning of trial before we start.

9          Now, Ms. Ledgewood, I know you had some other

10  questions.

11         MS. LEDGEWOOD:  Thank you, sir.  Just kind of

12  housekeeping matters if you don't mind.

13         THE COURT:  Yes, ma'am.

14         MS. LEDGEWOOD:  One is obviously Mr. Sulik is

15  actually a federal prisoner now because he has a prior

16  conviction that he's serving time on, even though that

17  conviction is on appeal.

18         THE COURT:  Yes, ma'am.

19         MS. LEDGEWOOD:  So I believe -- I think we are

20  all in agreement that he should be tried in civilian

21  clothes.

22         THE COURT:  Yes, ma'am.

23         MS. LEDGEWOOD:  And the reason I say civilian is

24  I know Mr. Sulik had discussions with his first counsel

25  about his desire to wear his dress blue Marine uniform

1  during the trial.  I've done a little looking into that,

2  and it would appear to me that protocol from the military

3  is unfortunately he is not supposed to do that.  Were

4  this -- he is an honorably discharged veteran, I think as

5  Your Honor knows, and I think everybody, regardless of

6  their position in this case, honors his service to our

7  country.

8          But that having been said, I think were this a

9  wedding, a military wedding, or this a military funeral,

10 that he could quite rightly and quite proudly wear those.

11         I've been telling him that I do not believe that

12 he can wear that.  I'm afraid it would be -- could be

13 viewed as an attempt to unfairly influence the jury.  In

14 other words, almost invited juror nullification.  I don't

15 think that is his intent, I really don't, but I don't want

16 to get him in a jam on that, and so --

17         THE COURT:  You're correct in your assessment.

18 What I will certainly allow is he can explain his

19 background, or you can explain his background, his

20 military service.  I think that's certainly something that

21 can be addressed as part of his history, preliminary

22 introductory information.

23         But in terms of wearing a dress uniform, I agree

24 with your initial assessment.  I've looked at this on

25 occasions in the past, and that's the procedure that I

1  follow.

2         Now, we do have clothing here, appropriate

3  clothing, suits, other clothes for men.  And I -- I don't

4  know what Mr. Sulik was planning to do or what you were

5  planning to do, but if he doesn't have clothing available,

6  we'll certainly make that available to him.  He appears to

7  be 6 feet maybe.  Is that -- no?

8         DEFENDANT SULIK:  5-9.

9         THE COURT:  5-9, all right.  I think we have

10  some clothing.

11         DEFENDANT SULIK:  I have clothes, Your Honor.

12         THE COURT:  Oh, you do.  Okay.

13         MS. LEDGEWOOD:  We keep a -- we have kind of a

14  CJA clothing bank in the basement of Nash Marshal, but

15  don't tell him I outed him on that.

16         THE COURT:  Well, we have one here as well.

17         MS. LEDGEWOOD:  Do you?  Well, that's good.

18         THE COURT:  We do.

19         MS. LEDGEWOOD:  That's good.  That's excellent.

20         THE COURT:  We had a couple of situations come

21  up where defendants have been brought over and clothing

22  hasn't arrived or hasn't arrived on time, and so we have

23  to make those alternative arrangements.

24         MS. LEDGEWOOD:  We appreciate that, Your Honor.

25  Thank you.

```
 1              THE COURT:  So we -- that is available, but, of
 2   course, if Mr. Sulik has other clothing, I'm sure he would
 3   prefer to wear that than what we have that may not fit him
 4   as well.
 5              MS. LEDGEWOOD:  Thank you, sir.
 6              And, lastly, this is just a very minor technical
 7   point, but I've talked to Mr. Sulik about how he is
 8   indicted at -- 18 United States Code, Section 2252,
 9   little a, 4, big B; not 2252, large A.  But I have a
10   tendency when I talk -- when I talk with him about this
11   case, or when I talk with the United States, to use the
12   term child pornography.  So if I were to slip and say
13   that, I hope that's not a problem.  I don't think the
14   jurors would be aware of that distinction, but I don't
15   want -- would not want -- it's just awkward for me to say
16   exploited images of children.  I'll try to say images, but
17   if that's something that the Court feels strongly about,
18   I'll certainly -- I'm bringing that up just to make sure I
19   do it correctly.
20              THE COURT:  Well, I appreciate that, and that
21   also may prevent me from using the wrong term as well.
22              MS. LEDGEWOOD:  Well, I'm not --
23              THE COURT:  I do appreciate that.  That's a good
24   point to make.
25              MS. LEDGEWOOD:  Thank you, sir.
```

1          THE COURT:  All right.  Mr. Boone, any other

2   issues that we can take up on behalf of the government?

3          MR. BOONE:  No, Your Honor.  I have nothing

4   further.

5          THE COURT:  All right.

6          MS. LEDGEWOOD:  Your Honor, excuse me.  My

7   client just asked me a question, and I apologize.

8          THE COURT:  Yes, ma'am.  Go ahead.  Do you need

9   to turn the white noise on?

10       (Whereupon, an off-the-record discussion was had

11   between Ms. Ledgewood and Defendant Sulik out of hearing

12   of open court.)

13          MS. LEDGEWOOD:  Thank you, Your Honor.  He was

14   just -- he thought there was new discovery.  He heard the

15   cartoon reference.  I told him that was in a -- that's in

16   a Sixth Circuit case.

17          THE COURT:  Reference to that Sixth Circuit case

18   the government has talked about.

19          MS. LEDGEWOOD:  Yes, sir.  Thank you,

20   Your Honor.

21          THE COURT:  All right.  I believe our next

22   hearing is at 10:30.  Is that correct?

23          THE CLERK:  Yes, Your Honor.

24          THE COURT:  All right.  Let me get all my files

25   straightened up.  This is not a courtroom I usually use,

1  and so I want to make sure I don't take anyone's material

2  or leave any of my own.

3           MS. LEDGEWOOD:  And, Your Honor, thank you again

4  for being kind enough to accommodate us.

5           THE COURT:  Yes, ma'am.  And if there are other

6  issues that come up between now and the morning of trial,

7  as you know, I'll set aside 30 minutes before we start to

8  address any questions that the parties may have.

9           MR. BOONE:  Thank you.

10          MS. LEDGEWOOD:  Thank you.

11          THE COURT:  We will be in recess until 10:30

12  this morning.

13      (Whereupon, the Pretrial Conference Hearing

14  proceedings concluded at 10:20 a.m.)

15                  C E R T I F I C A T E

16      I, Peggy W. Weber, certify that the foregoing is a

17  correct transcript from the record of proceedings in the

18  above-entitled matter.

19

20

   August 2, 2019                    s/Peggy W. Weber

21      DATE                         PEGGY W. WEBER, RPR

22

23

24

25