UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,        ) Lexington Criminal
                                 ) Action No. 18-20
        Plaintiff,               )
                                 ) At Lexington, Kentucky
-vs-                             )
                                 ) February 12, 2019
SCOTT W. SULIK,                  ) 8:30 a.m.
                                 )
        Defendant.               ) **DAY 1 OF 2**


TRANSCRIPT OF JURY TRIAL PROCEEDINGS
**(PRETRIAL CONFERENCE, PRELIMINARY JURY INSTRUCTIONS, AND
OPENING STATEMENT BY THE GOVERNMENT)**
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE


Appearances of Counsel:

On behalf of Plaintiff:      ANDREW T. BOONE, ESQ.
                             Assistant U.S. Attorney
                             260 West Vine Street
                             Suite 300
                             Lexington, Kentucky  40507

On behalf of Defendant:      PAMELA S. LEDGEWOOD, ESQ.
                             271 West Short Street
                             Suite 403
                             Lexington, Kentucky  40507

Court Reporter:              PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814


Proceedings recorded by mechanical stenography,
transcript produced by computer.

```
 1       (Whereupon, Day 1 of the Jury Trial proceedings
 2  commenced on Tuesday, February 12, 2019, at 8:30 a.m., on
 3  the record in open court, without the prospective juror
 4  members presents, as follows.)
 5              THE COURT:  All right.  Thank you.
 6              Madam Clerk, if you would call the matter
 7  scheduled for trial this morning.
 8              THE CLERK:  Yes, Your Honor.
 9              Lexington Criminal Action Number 18-20,
10  United States of America versus Scott W. Sulik, called for
11  jury trial.
12              THE COURT:  Thank you.
13              If counsel would state their appearances,
14  please.
15              Mr. Boone, good morning.
16              MR. BOONE:  Good morning, Your Honor.
17              Andy Boone for the United States.
18              THE COURT:  All right.  Thank you.
19              And, Ms. Ledgewood, good morning.
20              MS. LEDGEWOOD:  Thank you, Your Honor.  Good
21  morning to the Court.
22              Pam Ledgewood for Mr. Scott Sulik.
23              THE COURT:  All right.  Good morning.
24              DEFENDANT SULIK:  Good morning, Your Honor.
25              THE COURT:  You-all may be seated.  Thank you.
```

1          Just a couple of matters to review before we

2 begin the jury selection this morning.

3          Hopefully yesterday you received the statement

4 of the case and the preliminary jury instructions and also

5 a draft of the final jury instructions in the case so you

6 could be looking over those in advance of trial.

7          Let me make sure that everyone received those.

8          Mr. Boone.

9          MR. BOONE:  Yes, Your Honor.

10          THE COURT:  All right.  Did you see any

11 significant issues or problems with any of those

12 documents?

13          MR. BOONE:  No issues whatsoever with the

14 preliminary instructions or the statement of the case or

15 the main instructions.  Ms. Ledgewood and I did discuss

16 initially the need for a special verdict form in light --

17          THE COURT:  All right.

18          MR. BOONE:  -- of the fact that the indictment

19 alleges that the -- at least one of the images was a minor

20 under the age of 12.  I think the jury would need to

21 specifically find that to trigger the maximum penalty

22 listed in the indictment.

23          THE COURT:  All right.  Were you-all planning to

24 submit a proposed special verdict form?

25          MR. BOONE:  We certainly can.

1            THE COURT:  All right.  Well, I may have a

2  chance to work on that during the break.  And if I do,

3  I'll give you a draft, and we can take comments at that

4  point.

5            MR. BOONE:  Thank you.

6            THE COURT:  All right.  Ms. Ledgewood, did you

7  see any problems with any of those documents?

8            MS. LEDGEWOOD:  No, sir.  And I would echo what

9  Mr. Boone said.  We had both, I think, noticed this issue

10  earlier.

11            THE COURT:  Okay.

12            MS. LEDGEWOOD:  And in the course of the

13  preparation we just -- at least on my part, I just

14  neglected to bring it to your attention earlier.

15            THE COURT:  All right.

16            MS. LEDGEWOOD:  I apologize for that.

17            THE COURT:  All right.

18            MS. LEDGEWOOD:  But that's the only -- the

19  special -- the age instruction is the only issue that I

20  saw.

21            Thank you.

22            THE COURT:  All right.  Of course, in those

23  final instructions if you'll notice there's certain parts

24  that were highlighted because we will have to wait and see

25  how the case develops during trial before making those

```
 1   final changes.

 2           Mr. Boone, as I understand, you'll presenting

 3   two witnesses during your case-in-chief?

 4           MR. BOONE:  Yes, Your Honor.

 5           THE COURT:  Will you have a case agent?

 6           MR. BOONE:  Yes.  Special Agent Lawrence Anyaso

 7   with Capitol Police, he should be here any minute,

 8   Your Honor.

 9           THE COURT:  Is it Anyaso?  Is that the

10   pronunciation?

11           MR. BOONE:  Yes.  A-N-Y --

12           THE COURT:  A-S-O.

13           MR. BOONE:  -- A-S-O.  Yes, sir.

14           THE COURT:  I just wasn't sure how that was

15   pronounced.  He may be arriving now.

16           Good morning.

17           SPECIAL AGENT ANYASO:  Good morning, Judge.

18           THE COURT:  In an earlier hearing, we'd also

19   discussed an issue about a prospective expert witness for

20   the defendant.  Has that matter been resolved?

21           MR. BOONE:  My understanding is the defense does

22   not intend to call an expert witness.

23           THE COURT:  All right.

24           MR. BOONE:  We can find that out from

25   Ms. Ledgewood.
```

1              THE COURT:  All right.  Is that accurate,

2    Ms. Ledgewood, at this point?

3              MS. LEDGEWOOD:  That is correct.  As far as I

4    know, Your Honor.

5              THE COURT:  All right.

6              MS. LEDGEWOOD:  As recently as Sunday, Mr. Sulik

7    mentioned to me that possibility.  However, the Court put

8    us under a deadline in which we had to submit if we get

9    any information, and just reciprocal discovery to the

10   government, and that deadline came and went.  So the

11   answer is no.

12             THE COURT:  All right.

13             MS. LEDGEWOOD:  No expert witness at all.

14             THE COURT:  All right.  Earlier we had gone over

15   the selection procedure for the jury, and let me just do

16   that again this morning.

17             And you-all can have a seat.

18             I'll begin the process by asking the standard

19   questions that I ask in these matters.  I would expect it

20   would probably take 30 to 45 minutes depending upon the

21   answers that are given by the jurors.

22             After I have finished, I'll ask you to come up

23   to sidebar, and if you have any additional questions that

24   you think should be asked, I will either do that at your

25   request or if you want time to do that yourself, I'll give

1  you the time that's outlined in the scheduling order in

2  the case to do that.

3           Mr. Boone, I'll identify your two prospective

4  witnesses.  But if there's anything else the parties wish

5  to ask, you can certainly do that.

6           If you don't have additional questions, then at

7  sidebar I'll take up any challenges for cause that you may

8  have.

9           And then after we've gone through challenges for

10 cause, I'll ask the clerk to call two panels of jurors.

11 The first would be a panel of 28.  The second would be a

12 panel of three.  And against that first panel the parties

13 will exercise their peremptory challenge for the main jury

14 to be seated in the case.

15          Of course, by rule the defendant has

16 10 challenges against the main panel.  The

17 government has six.  And you each get one challenge

18 against the panel of three alternates, prospective

19 alternates in the case.

20          The first 12 jurors called from the main panel

21 but not stricken would be seated.  The first alternate

22 called but not stricken would also be seated.

23          For example, with the alternate if the parties

24 were to both challenge the first person called on the

25 alternate panel, then the second person called would be

1  the alternate that would be seated in the case.

2          DEFENDANT SULIK:  Sir, could you repeat that one

3  more time?

4          THE COURT:  Certainly.

5          DEFENDANT SULIK:  I didn't mean to interrupt

6  you.

7          THE COURT:  Yes, that's fine.  There are two

8  panels.  There's a main panel, and there's a panel for

9  alternates.  By rule, you have 10 challenges against the

10  main panel of 28.  The government has six.  And the

11  strikes are blind strikes.  In other words, it's not one

12  to one to one to one.  But the parties after we take a

13  break will choose -- you'll choose the 10 jurors from the

14  main panel that you wish to strike from the case.  You

15  don't have to strike anyone, but if you choose to strike,

16  you can strike up to 10.  The government can follow that

17  same procedure up to six.

18          Then the first 12 that would be called from

19  that main panel that were not stricken would be the

20  main panel.  In other words, we have 28, and if you

21  were to both use your strikes against the 28, we take the

22  16 prospective strikes away from the 28, and we get down

23  to 12.  If you strike the same people, and you certainly

24  could do that.  There could be some that would be stricken

25  by both sides, same person.  It's the first 12 called but

1  not stricken.

2              And then the same procedure is followed with the

3  panel of alternates, three prospective alternates.  Each

4  side gets one strike, and the first one called but not

5  stricken from that panel of three would be the alternate

6  seated in the case.

7              DEFENDANT SULIK:  Thank you.

8              THE COURT:  Will 15 minutes be sufficient for

9  opening statements, Mr. Boone?

10             MR. BOONE:  Yes.

11             THE COURT:  Ms. Ledgewood.

12             MS. LEDGEWOOD:  Yes.  And at this point I plan

13  to reserve.

14             THE COURT:  All right.  That was going to be my

15  next question.

16             MS. LEDGEWOOD:  Yes, sir.

17             THE COURT:  All right.  The -- I believe the

18  language that I use in those preliminary jury instructions

19  indicates that the defendant may make an opening

20  statement.  That's intended to allow you to change that

21  decision if you -- if that were to occur.

22             MS. LEDGEWOOD:  Yes, sir.  Thank you.

23             THE COURT:  All right.

24             All right.  Let me see if -- if you have any

25  questions that I haven't covered at this point that we

 1  need to review before the jury comes in.  And typically
 2  what we'll do is we'll -- if we have all of our jurors
 3  present - I think we have 44 that were called in the for
 4  case - we'll start bringing those over about eight to
 5  10 minutes before we're scheduled to start so we can have
 6  them seated, take the roll, and then hopefully start right
 7  at 9 o'clock.
 8          But let me see if we have any other -- any other
 9  questions.
10          Mr. Boone, for the government?
11          MR. BOONE:  No questions, Your Honor.  But one
12  additional matter.  We've agreed to a stipulation
13  regarding the admissibility of certain exhibits so I can
14  tender that to the Court here --
15          THE COURT:  All right.
16          MR. BOONE:  -- for the record.
17          THE COURT:  If you could.
18          And, Mr. Boone, at the appropriate time if
19  you'll just ask if I would read the stipulations to the
20  jury, I'll do that.
21          MR. BOONE:  Thank you, Your Honor.
22          THE COURT:  Okay.  Would you just want me to
23  read number 1 and 2 or -- well, 3 for really --
24          MR. BOONE:  Just 1 and 2, Your Honor --
25          THE COURT:  1 and 2.

1          MR. BOONE:  -- would be sufficient.

2          THE COURT:  1 and 2, all right.

3          All right.  I'll certainly do that at the

4  appropriate time.

5          Mr. Boone, anything else for the government?

6          MR. BOONE:  No, Your Honor.

7      (Whereupon, a SEALED discussion was had, and the

8  transcript may be found under separate cover and is

9  SEALED until further orders of the Court, and Day 1 of

10  the Jury Trial proceedings continued, without the

11  prospective juror members present, as follows.)

12          MS. LEDGEWOOD:  The other -- one more procedural

13  thing.  I suspect based on my conversations with him, that

14  Mr. Sulik may want to consult with me on the juror

15  strikes.

16          THE COURT:  Yes, ma'am.

17          MS. LEDGEWOOD:  And so that would be my first

18  question.  What would be the best way for us to accomplish

19  that?

20          THE COURT:  Generally what I will -- well, we

21  will -- let's do this.  After I call you up for a bench

22  conference to see if you have any other questions, at

23  that point when I call you up, we'll go ahead and take a

24  brief recess, and I'll let the jury go out, and then we

25  can take up any additional questions.  Well, wait a

 1   minute.  Let me -- what we'll do is we'll make sure that
 2   you don't have any additional questions before we send the
 3   jury out.  If you don't -- and once we finish with that
 4   part of the voir dire, at that point when you go back to
 5   counsel table, if we don't have any other questions, then
 6   we'll take a brief recess at that point.  That would be
 7   for challenges for cause.  And that generally would not
 8   take longer than the time I would give you for peremptory
 9   challenges so maybe 10 minutes at that point.
10           MS. LEDGEWOOD:  Yes, sir, that would be fine.
11           THE COURT:  And then we'll come back, and after
12   you've exercise -- or after we've gone over challenges for
13   cause, we can do that in the open courtroom before we
14   bring the jury back.
15           Then when they come back, I can excuse those
16   challenges for cause, and then we can seat the two panels
17   at that point.  And then we'll have to take another break
18   at that time.
19           MS. LEDGEWOOD:  Yes, sir.  Thank you.
20           THE COURT:  Will that be sufficient?
21           MS. LEDGEWOOD:  Excuse me, he's asking me a
22   question.  May I consult with him?
23           THE COURT:  Yes, ma'am, certainly.
24           MS. LEDGEWOOD:  Thank you.
25        (Whereupon, an off-the-record discussion was had

1   between Ms. Ledgewood and Defendant Scott W. Sulik, out

2   of hearing of open court.)

3            MS. LEDGEWOOD:  Thank you, Your Honor.

4            And the other question was I also suspect that

5   when it comes to cross-examination he may want to have

6   significant input in that.  I intend to allow him to do

7   that.  So what I just need to -- at that appropriate point

8   then the Court would just mute the microphone for us if we

9   ask for that.

10           THE COURT:  Yes.  And if you need more time than

11  that, then we can take a brief recess and send the jury

12  out of the room --

13           MS. LEDGEWOOD:  I appreciate that.

14           THE COURT:  -- if you need time to consult.

15           MS. LEDGEWOOD:  We'll try not to do that too

16  much, but I want to make sure I've given him significant

17  input.

18           THE COURT:  Yes, ma'am.  I mean, generally --

19  well, we were expecting to have two witnesses, and so I

20  don't think it will be significant problem if you do need

21  additional time to consult, but you can just let me know.

22           MS. LEDGEWOOD:  Thank you, Your Honor.

23           THE COURT:  All right.  Let me see if we have

24  any other issues to take up.  No?

25           MR. BOONE:  Nothing further at this time from

1   us.

2            THE COURT:  All right.

3            All right.  Mr. Anyaso, before we proceed, if I

4   mispronounce your name, I apologize in advance.

5            SPECIAL AGENT ANYASO:  No, no problem,

6   Your Honor.

7            THE COURT:  I'll try not to do that, but that's

8   a problem I have at times during cases.  I forget the

9   correct pronunciation.

10           SPECIAL AGENT ANYASO:  Appreciate it.

11   Thank you.

12           THE COURT:  All right.  We'll take a brief

13   recess.  When we come back, hopefully we'll have the

14   jurors in the courtroom.

15           Madam Clerk, if you would call the roll, and let

16   me know when we're ready to proceed.

17           THE CLERK:  Yes, Your Honor.

18           THE COURT:  All right.  Thank you.

19       (Whereupon, a recess was taken at 8:50 a.m.,

20   and Day 1 of the Jury Trial proceedings continued at

21   9:00 a.m., with voir dire of the prospective

22   juror members but was not transcribed and made a part

23   of this transcript, after which the proceedings

24   continued at 10:55 a.m., as follows.)

25           THE COURT:  All right.  Thank you.

1              Let me see if we have any issues.  Madam Clerk,

2   have the attorneys submitted their challenges?

3              THE CLERK:  Yes, Your Honor.

4              THE COURT:  All right.  Are we ready to proceed?

5              MR. BOONE:  Yes, Your Honor.

6              MS. LEDGEWOOD:  Yes, Your Honor.

7              THE COURT:  All right.  Before I bring the jury

8   in, I just have one question.

9              Have the parties had any discussions about the

10  forfeiture allegation if we get to that point in the case

11  and how they intend to handle that?

12             MR. BOONE:  We tried to do a proposed -- or a

13  stipulation relating to how the -- it's not in the

14  stipulation that I tendered this morning.  We were

15  unsuccessful.

16             THE COURT:  All right.

17             MR. BOONE:  We have had some discussion about

18  it, but we haven't reached an agreement yet.

19             THE COURT:  All right.

20             All right.  Thank you.

21             Bring the jury over.

22             MS. LEDGEWOOD:  I think we'll be able to work

23  that out, Your Honor.

24             THE COURT:  All right.  All right.  Thank you.

25         (Whereupon, the prospective juror members enter the

1  courtroom.)

2         THE COURT:  At this time, ladies and gentlemen,

3  the clerk will call the number of 13 jurors that will be

4  seated in the jury box, and after we've seated those

5  jurors, I'll be able to excuse those that do remain.

6         Madam Clerk.

7         THE CLERK:  Juror Number 730, 757, 747, 724,

8  744, 762, 745, 758, 828, 746, 824, 774, and 738.

9         THE COURT:  Thank you.

10         Let me see if we have any issues to take up

11  before I excuse the remaining jurors.

12         MR. BOONE:  No, Your Honor.

13         THE COURT:  Thank you.

14         Ms. Ledgewood, any issues to take up?

15         MS. LEDGEWOOD:  Oh, no, Your Honor, I'm sorry.

16  Thanks.

17         THE COURT:  Yes.  Ladies and gentlemen, for

18  those of you that were not selected, I do want to thank

19  you for being here this morning.  As I've told other

20  jurors as they've been excused, the clerk will advise you

21  as to when you should report again, but I do certainly

22  appreciate you being here this morning.

23         And I do like that Peyton Manning jersey, by the

24  way.

25         You-all will be excused.  Thank you.

1          (Whereupon, the remaining prospective juror members

2    leave the courtroom.)

3               THE COURT:  Thank you, and please be seated.

4               Madam Clerk, at this time if you would please

5    administer the oath to the jury that will be trying the

6    case.

7               THE CLERK:  Yes, Your Honor.

8               Could you each please stand and raise your right

9    hand?

10              Do you and each of you solemnly swear or affirm

11   that you will well and truly try, and a true deliverance

12   make, in the case now on trial in the United States of

13   America against Scott W. Sulik, and render a true verdict

14   according to the law and the evidence, so help you God?

15              Do you and each of you so swear or affirm?

16        (Affirmative responses)

17              THE COURT:  All right.  Thank you, and please be

18   seated.

19              Does everyone have a notebook that would like to

20   have one?

21              If you need paper or pen or something to write

22   with during the course of the trial, if you'll just signal

23   to me if -- and I'll make sure that you get that.

24              Now, the way we're going to proceed at this

25   point is I'm going to give you some preliminary jury

1    instructions here in just a moment to help explain some of
2    the general rules and also the specific charge that's been
3    made in the case.

4            And then after I have given you those
5    instructions, the attorneys will have the opportunity to
6    provide you with an opening statement.  The defendant has
7    the opportunity to reserve opening statement if that is
8    the decision that he would make.

9            And then after that we'll proceed with
10   presentation of proof in the case.

11           I generally will break around noon or perhaps a
12   little bit before noon to give you a chance to go out for
13   lunch if that's what you choose to do.  I usually give you
14   an hour and 10 minutes for lunch, but if we break at
15   12:00, I may give you a little bit more time than that.

16           All right.  Now, members of the jury, now that
17   you have been sworn, I will give you some preliminary
18   instructions to guide you in your participation in the
19   trial.

20           First, it will be your duty to find from the
21   evidence what the facts are.  You and you alone will be
22   the judges of the facts.

23           You will then have to apply those facts to the
24   law as the Court will instruct you.

25           You must follow that law whether you agree with

1    it or not.

2         Now, the evidence from which you will find the

3    facts will consist of the testimony of witnesses,

4    documents, and other things received as exhibits, and any

5    facts that the lawyers agree to or stipulate to or that

6    the Court may instruct you to find.

7         Now, certain things are not evidence and must

8    not be considered by you, and I'll list them for you now.

9         Statements, arguments, and questions by the

10   lawyers are not evidence.

11        Objections to questions are not evidence.

12   Lawyers have an obligation to their clients to make

13   objections when they believe the evidence being offered is

14   improper under the rules of evidence.

15        You should not be influenced by the objection or

16   by the Court's ruling on it.

17        If the objection is sustained, ignore the

18   question.

19        If it's overruled, treat the answer like any

20   other.

21        If you're instructed that some items of evidence

22   are received for a limited purpose only, then you must

23   follow that instruction.

24        Testimony that the Court has excluded or told

25   you to disregard is not evidence and must not be

1   considered.

2           Anything that you have seen or heard outside the

3   courtroom is not evidence and must be disregarded.

4           You are to decide the case based solely on the

5   admissible evidence presented here in the courtroom.

6           Now, there are two kinds of evidence, direct and

7   circumstantial.

8           Direct evidence is direct proof of a fact such

9   as the testimony of an eyewitness.

10          Circumstantial evidence is proof of facts from

11  which you may infer or conclude that other facts exist.

12          I will give you further instructions on these,

13  as well as other matters, at the end of the case, but keep

14  in mind that you may consider both kinds of evidence.

15          It will be up to you to decide which witnesses

16  to believe, which witnesses not to believe, and how much

17  of any witness's testimony to accept or reject.

18          I will give you some guidelines for determining

19  the credibility of witnesses at the end of the case.

20          As you know, this is a criminal case, and there

21  are three basic rules about criminal cases that you must

22  keep in mind.

23          First, a defendant is presumed innocent unless

24  and until proven guilty.

25          An indictment against a defendant brought by the

1   United States is only an accusation, nothing more.  It's

2   not proof of guilt or anything else.  A defendant,

3   therefore, starts out with a clean slate.

4            Second, the burden of proof is on the

5   United States until the very end of the case.  A defendant

6   has no burden to prove his innocence or to present any

7   evidence.

8            Likewise, a defendant has no burden to testify.

9            Third, the United States must prove a

10  defendant's guilt beyond a reasonable doubt.  I'll give

11  you further instructions on this point later, but bear in

12  mind that in this respect a criminal case is different

13  from a civil case.

14           Now, as I advised you earlier, the indictment

15  contains one count for your consideration.  The defendant

16  is charged with possessing a visual depiction of a minor

17  engaged in sexually explicit conduct.

18           To find the defendant guilty of this charge, you

19  must find that the government has proved the following

20  elements beyond a reasonable doubt, and there are five.

21           First, that the defendant knowingly possessed

22  one or more matters containing a visual depiction.

23           Second, that the production of the visual

24  depiction involved the use of a minor engaged in sexually

25  explicit conduct.

1          Third, that the visual depiction was of a minor

2    engaging in sexually explicit conduct.

3          Fourth, that the defendant knew the visual

4    depiction involved a minor engaging in sexually explicit

5    conduct.

6          And, fifth, that the visual depiction had been

7    transported using any means or facility of interstate

8    commerce, or in or affecting interstate commerce, or that

9    the visual depiction was produced using material that had

10   been mailed, shipped, or transported in interstate

11   commerce by any means, including a computer.

12         I'll give you more detailed instructions on some

13   of these terms at the conclusion of the case.  However, I

14   will provide one definition for you now.

15         The term "sexually explicit conduct" means

16   actual or simulated;

17         Sexual intercourse, including genital-genital,

18   oral-genital, anal-genital, or oral-anal, whether between

19   persons of the same or opposite sex;

20         Masturbation;

21         Lascivious exhibition of the genitals or the

22   pubic area of a person.  In deciding whether an exhibition

23   is lascivious you may consider these factors; whether the

24   focal point of the visual depiction is on the child's

25   genitalia or pubic area; whether the setting of the visual

1  depiction is sexually suggestive; that is, in a place or
2  posed generally associated with sexual activity; whether
3  the child is depicted in an unnatural pose or an
4  inappropriate attire considering the age of the child;
5  whether the child is fully or partially clothed or nude;
6  whether the visual depiction suggests sexual coyness or a
7  willingness to engage in sexual activity; whether the
8  visual depiction is intended or designed to elicit a
9  sexual response in the viewer.
10          Now, this list is not exclusive -- exhaustive,
11  excuse me.  And an image need not satisfy any single
12  factor to be deemed lascivious.  Instead, you must
13  determine whether the visual depiction is lascivious based
14  upon its overall context -- or content, excuse me.
15          It is for you to decide the weight or lack of
16  weight to be given to any of these factors.
17          Now, let me mention a few things about your
18  conduct as jurors.
19          First, during the trial you're not to discuss
20  the case with anyone, or permit anyone to discuss it with
21  you.  Until you retire to the jury room at the end of the
22  case to deliberate on your verdict, you're simply not to
23  talk about the case.
24          Second, do not read or listen to anything
25  touching on this case in any way.

24

1            If anyone should try to talk with you about it,
2   bring it to the Court's attention promptly.
3            Third, do not do any research or make any
4   investigation about the case on your own.
5            Fourth, do not form any opinion until all the
6   evidence is in.  Keep an open mind until you start your
7   deliberations at the end of the case.
8            Now, finally, you will be allowed to take notes
9   during the course of the trial.  Your notes should be used
10  only as an aid to your memory.  You should not give your
11  notes precedence over your independent recollection of the
12  evidence.
13           Also, you should not be unduly influenced by the
14  notes of other jurors.
15           The trial will now begin.
16           First, the United States Attorney may make an
17  opening statement, which is simply an outline to help you
18  understand the evidence as it comes in.
19           Next, the defendant's attorney may make an
20  opening statement.  Opening statements are neither
21  evidence, nor arguments.
22           The United States will then present its
23  witnesses, and the defendant's attorney may cross-examine
24  them.
25           Following the United States' case the defendant

1  may, if he wishes, present witnesses whom the

2  United States may cross-examine.

3          There may also be some rebuttal testimony or

4  evidence.

5          After all of the evidence is in, the attorneys

6  will present their closing arguments to summarize and

7  interpret the evidence for you, and the Court will

8  instruct you on the law.  You will then retire to

9  deliberate on your verdict.

10          And as indicated, at this time the attorneys are

11  given the opportunity for an opening statement.  The

12  United States by rule proceeds first.

13          Mr. Boone, are you ready to give your opening?

14          MR. BOONE:  Yes, Your Honor.

15          THE COURT:  You may proceed.

16          MR. BOONE:  May it please the Court.

17          THE COURT:  Mr. Boone.

18          MR. BOONE:  Ms. Ledgewood, ladies and gentlemen

19  of the jury.

20          Good morning.

21          I haven't introduced myself to you yet.  My name

22  is Andy Boone.  I represent the United States government.

23          We're here today on a case, as Judge Reeves has

24  indicated to you, that involves a possession of images of

25  children that are engaged in sexually explicit conduct.

1            It's a difficult case.  Necessarily, it involves

2    looking at some of those images to fully weigh the

3    evidence, and I know that that comes with some difficulty.

4    And so on behalf of everyone here, and this is an

5    important case to everyone here, we really appreciate your

6    attention.  So thank you before I begin.

7            A summary of the case.

8            The evidence that you will hear will establish

9    that law enforcement agents executed a search warrant at

10   the defendant's home, Mr. Sulik's home, and found devices

11   that contained digital photographs of children,

12   specifically, three of them, three photos that were found

13   of children engaging in sexually explicit acts.

14           The Court has given you preliminary instructions

15   on what a sexually explicit act means, and I'll preview

16   for you now that two of the images involve children

17   undressing, revealing their private parts in sexually

18   suggestive ways, and another engaged in a simulated sex

19   act.

20           So that's the case.  It's going to be relatively

21   brief, and I anticipate that we'll only have -- at least

22   the United States will only have two witnesses.

23           First, I'm going to call Special Agent Hugh

24   Thatcher.  He's a forensic examiner with the United States

25   Capitol Police, and he was present when the search warrant

1    was executed on Mr. Sulik's residence in January 2017.

2              At the time he searched for and seized several

3    electronic devices from the house.  You'll hear testimony

4    about some of them, but we'll really focus on two.

5              The first will be a smartphone, a phone

6    manufactured by the company LG, running the Google Android

7    software.

8              And then second you'll hear about Lenovo

9    ThinkPad laptop.

10             Special Agent Thatcher will testify to you about

11   a forensic examination that he conducted on each device.

12   He will discuss with you evidence that he found on each

13   device showing that the defendant knowingly possessed each

14   device, that he used each device.

15             And Special Agent Thatcher will testify about

16   his search of the content of each device and the sexually

17   explicit images that he found.

18             And he will explain to you about what his

19   examination found about what, when, and how the images

20   came to be on the defendant's smartphone and his laptop,

21   and what we know about that.

22             After Special Agent Thatcher concludes

23   his testimony, I anticipate that we will call

24   Special Agent Lawrence Anyaso, who is seated here with me.

25             Special Agent Anyaso will provide some

1  background about his investigation of the defendant.

2  He'll tell you that his investigation established that the

3  defendant lived in Arizona for most of 2017 during the

4  commencement of the investigation, and that he determined

5  the defendant moved to Versailles, Kentucky, in about

6  November of 2017, and he found the defendant there.

7            He was present when the search warrant was

8  executed at the defendant's home.

9            After the execution of the warrant, he sat the

10  defendant down for an interview and asked him a background

11  question.  What is your phone number?  And the defendant's

12  response, as he will testify, was I don't have a phone.

13  So we'll talk about that.

14            After hearing the evidence, I anticipate that

15  you'll be able to reach some conclusions about why the

16  defendant said that.

17            Now, as I said, I'll be brief.

18            And at the end of this case, I'll get to discuss

19  this evidence with you again.

20            My plan then will be to briefly explain to you

21  how I believe you can consider the evidence about when and

22  how these images were downloaded to the defendant's phone

23  and his laptop, that you'll be able to consider the

24  defendant's denial about even owning a phone, and how that

25  fits into the overall picture, and how you'll be able to

1  consider that evidence and conclude that the defendant

2  knew that he was in possession of three sexually explicit

3  photos of children.

4         So at the end of -- at the end of this case, I

5  will ask you to consider all of that evidence and return a

6  verdict of guilty on the single count charged in the

7  indictment.

8         Thank you, ladies and gentlemen.

9         THE COURT:  All right.  Thank you, Mr. Boone.

10        Ms. Ledgewood, do you wish to reserve?

11        MS. LEDGEWOOD:  I do, Your Honor.

12        THE COURT:  All right.  Counsel will reserve

13  opening until later in the case.

14     (Whereupon, Day 1 of the Jury Trial proceedings

15  continued and was transcribed previously, and may be

16  found under separate cover, and this concludes this

17  portion of the transcript.)

18              C E R T I F I C A T E

19     I, Peggy W. Weber, certify that the foregoing is a

20  correct transcript from the record of proceedings in the

21  above-entitled matter.

22

   August 11, 2019                 s/Peggy W. Weber
23      DATE                       PEGGY W. WEBER, RPR

24

25