UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,

     Plaintiff,

-vs-

SCOTT W. SULIK,

     Defendant.

) Lexington Criminal
) Action No. 18-20
)
) At Lexington, Kentucky
)
) February 13, 2019
) 9:00 a.m.
)
) **DAY 2 OF 2**

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE

Appearances of Counsel:

On behalf of Plaintiff:
ANDREW T. BOONE, ESQ.
Assistant U.S. Attorney
260 West Vine Street
Suite 300
Lexington, Kentucky  40507

On behalf of Defendant:
PAMELA S. LEDGEWOOD, ESQ.
271 West Short Street
Suite 403
Lexington, Kentucky  40507

Court Reporter:
PEGGY W. WEBER, RPR
Official Court Reporter
U.S. District Court
P.O. Box 362
Lexington, Kentucky  40588
(859) 421-0814

Proceedings recorded by mechanical stenography,
transcript produced by computer.

1      (Whereupon, Day 2 of the Jury Trial proceedings

2   continued on Wednesday, February 13, 2019, at 9:00 a.m.,

3   on the record in open court, with the juror members

4   present, as follows.)

5           THE COURT:  All right.  Thank you.

6           Good morning everyone.

7           The record will reflect that all members of the

8   jury are present.

9           Defendant and counsel are also present in the

10  courtroom.

11          At this time, ladies and gentlemen, we'll

12  proceed with the jury instructions.

13          Then after I've read the instructions to you,

14  the attorneys will present their closing arguments, and

15  then you'll go back to begin your deliberations.

16          I will advise you that I'll give you copies,

17  each of you copies, of the jury instructions.  So you'll

18  have those back in the jury room.  There's only one copy

19  that will have the verdict form attached to it, and that

20  will be the one I'm reading from.

21          All right.  And, members of the jury, now it is

22  time for me to instruct you about the law that you must

23  follow in deciding this case.

24          I will start by explaining your duties and the

25  general rules that apply in every case.

1          After that I'll explain the elements or parts of

2    the crime that the defendant is accused of committing.

3          Then, I'll explain the defendant's position.

4          Next, I'll explain some rules that you must use

5    in evaluating particular testimony and evidence.

6          And last, I will explain the rules that you must

7    follow during your deliberations in the jury room and the

8    possible verdicts that you may return.

9          Please listen carefully to all of these

10   instructions.

11         Now, you have two main duties as jurors.  The

12   first one is to decide what the facts are from the

13   evidence that you saw and heard here in court.

14         Deciding what the facts are is your job, and not

15   mine, and nothing that I have said or done during this

16   trial was meant to influence your decision about the facts

17   in any way.

18         Your second duty is to take the law that I give

19   you, apply it to the facts, and decide if the government

20   has proved the defendant guilty beyond a reasonable doubt.

21         It's my job to instruct you about the law, and

22   you're bound by the oath that you took at the beginning of

23   the trial to follow the instructions that I give you, even

24   if you personally disagree with them.

25         This includes the instructions that I gave

1  before and during the trial, and these instructions.  All

2  of the instruction are important, and you should consider

3  them together as a whole.

4          The attorneys may talk about the law during

5  their arguments, but if what they say is different than

6  what I say, then you must follow what I say.  What I say

7  about the law controls.

8          Perform these duties fairly.  Do not let any

9  bias, sympathy, or prejudice that you may feel toward one

10  side or the other influence your decision in any way.

11          As you know, the defendant has pleaded not

12  guilty to the crime charged in the indictment.  The

13  indictment is not any evidence at all of guilt.  It's just

14  the formal way that the government tells the defendant

15  what crimes he's accused -- what crime he's accused of

16  committing.  It does not even raise any suspicion of

17  guilt.

18          Instead, the defendant starts the trial with a

19  clean slate, with no evidence at all against him, and the

20  law presumes that he's innocent.

21          This presumption of innocence stays with him

22  unless the government presents evidence here in court that

23  overcomes the presumption and convinces you beyond a

24  reasonable doubt that he's guilty.

25          This means that he has no obligation to present

1    any evidence at all or to prove to you in any way that

2    he's innocent.  It's up to the government to prove that

3    he's guilty, and this burden stays on the government from

4    start to finish.

5              You must find the defendant not guilty unless

6    the government convinces you beyond a reasonable doubt

7    that he is guilty.

8              The government must prove every element of the

9    crime charged beyond a reasonable doubt.  Proof beyond a

10   reasonable doubt does not mean proof beyond all possible

11   doubt.  Possible doubt or doubts based purely on

12   speculation are not reasonable doubts.  A reasonable doubt

13   is a doubt based on reason and common sense.  It may arise

14   from the evidence, the lack of evidence, or the nature of

15   the evidence.

16             Proof beyond a reasonable doubt means proof

17   which is so convincing that you would not hesitate to rely

18   and act on it in making the most important decisions in

19   your own lives.  If you are convinced that the government

20   has proved the defendant guilty beyond a reasonable doubt,

21   say so by returning a guilty verdict.

22             If you're not convinced, say so by returning a

23   not guilty verdict.

24             You must make your decision based only on the

25   evidence that you saw and heard here in court.  Do not let

1    rumors, suspicions, or anything else that you may have
2    heard outside of court influence your decision in any way.
3            The evidence in the case includes only what the
4    witnesses said while they were testifying under oath, the
5    exhibits that I allowed into evidence, the stipulations
6    that the parties agreed to, and any facts that I have
7    judicially noticed.
8            Nothing else is evidence.  The lawyers'
9    statements and arguments are not evidence.  Their
10   questions are not evidence.  My legal rulings are not
11   evidence.  And my comments and questions are not evidence.
12           Make your decision based only on the evidence as
13   I've defined it here, and nothing else.
14           You should use your common sense in weighing the
15   evidence.  Consider it in light of your everyday
16   experience with people and events, and give it whatever
17   weight you believe it deserves.
18           If your experience tells you that certain
19   evidence reasonably leads to a conclusion, you're free to
20   reach that conclusion.
21           Now, you've heard the terms "direct" and
22   "circumstantial evidence."
23           Direct evidence is simply evidence like the
24   testimony of an eyewitness, which if you believed it,
25   directly proves a fact.

1          If a witness testified that he saw it raining
2    outside and you believed him, that would be direct
3    evidence that it was raining.
4          Circumstantial evidence is simply a chain of
5    circumstances that indirectly proves a fact.
6          If someone walked into the courtroom wearing a
7    raincoat covered with drops of water and carrying a wet
8    umbrella, that would be circumstantial evidence from which
9    you could conclude that it was raining.
10          It's your job to decide how much weight to give
11    the direct and circumstantial evidence.  The law does not
12    make any distinction between the weight that you should
13    give to either one, or say that any one -- say that one is
14    any better evidence than the other.  You should consider
15    all of the evidence, both direct and circumstantial, and
16    give it whatever weight you believe it deserves.
17          Another part of your job as jurors is to decide
18    how credible or believable each witness was.  Now, this is
19    your job, and not mine.  It is up to you to decide if a
20    witness's testimony was believable and how much weight you
21    think it deserves.  You're free to believe everything that
22    a witness said, or only part of it, or none of it at all.
23    But you should act reasonably and carefully in making
24    these decisions.
25          Let me suggest some things for you to consider

1  in evaluating each witness's testimony.

2          Ask yourself if the witness was able to clearly

3  see or hear the events.  Sometimes even an honest witness

4  may not have been able to see or hear what was happening

5  and may make a mistake.

6          Ask yourself how good the witness's memory

7  seemed to be.  Did the witness seem able to accurately

8  remember what happened?

9          Ask yourself if there was anything else that may

10 have interfered with the witness's ability to perceive or

11 remember the events.

12         Ask yourself how the witness acted while

13 testifying.  Did the witness appear honest, or did the

14 witness appear to be lying?

15         Ask yourself if the witness had any relationship

16 to the government or the defendant or anything to gain or

17 lose from the case that might influence the witness's

18 testimony.

19         Ask yourself if the witness had any bias or

20 prejudice or reason for testifying that might cause a

21 witness to lie or slant the testimony in favor of one side

22 or the other.

23         Ask yourself if the witness testified

24 inconsistently while on the witness stand, or if the

25 witness said or did something, or failed to say or do

1  something at any other time that is inconsistent with what

2  the witness said while testifying.

3          If you believe that the witness was

4  inconsistent, ask yourself if this makes the witness's

5  testimony less believable.  Sometimes it may, and other

6  times it may not.

7          Consider whether the inconsistency was about

8  something important or about some unimportant detail.

9          Ask yourself if it seemed like an innocent

10  mistake or if it seemed deliberate.

11          And ask yourself how believable the witness's

12  testimony was in light of all of the other evidence.  Was

13  the witness's testimony supported or contradicted by other

14  evidence that you found believable?

15          If you believe that a witness's testimony was

16  contradicted by other evidence, remember that people

17  sometimes forget things, and that even two honest people

18  who witness the same event may not describe it exactly the

19  same way.

20          These are only some of the things that you may

21  consider in deciding how believable each witness was.

22          You may also consider other things that you

23  think shed light on the witness's believability.  Use your

24  common sense and your everyday experience in dealing with

25  other people, and then decide what testimony you believe

1   and how much weight you think it deserves.

2           Now, one more thing about the witnesses.

3   Sometimes jurors wonder if the number of witnesses who

4   testified make any difference.

5           Do not make any decision based only on the

6   number of witnesses who testified.  What is more important

7   is how believable the witnesses were and how much weight

8   you think their testimony deserves.  Concentrate on that,

9   not the numbers.

10          And that concludes the part of my instructions

11  explaining your duties and the general rules that apply in

12  every criminal case.  In a moment, I will explain the

13  elements of the crime that the defendant is accused of

14  committing.

15          But before I do that, I want to emphasize that

16  the defendant is only on trial for the particular crime

17  charged in the indictment.  Your job is limited to

18  deciding whether the government has proved the crime

19  charged.

20          Also, keep in mind that whether anyone else

21  should be prosecuted and convicted for this crime is not a

22  proper matter for you to consider.  The possible guilt of

23  others is no defense to a criminal charge.

24          Your job is to decide if the government has

25  proved this defendant guilty.  Do not let the possible

11

1 guilt of others influence your decision in any way.

2       And, next, I want to say a word about the

3 dates -- or the date mentioned in the indictment.

4       The indictment charges that the crime happened,

5 quote, on or about, closed quote, January 10th, 2018.  The

6 government does not have to prove that the crime happened

7 on that exact date.  But the government must prove that

8 the crime happened reasonably close to that date.

9       And now I want to explain something about

10 proving a defendant's state of mind.

11       Ordinarily there's no way that a defendant's

12 state of mind can be proved directly, because no one can

13 read another person's mind and tell what that person is

14 thinking.

15       But a defendant's state of mind can be proved

16 indirectly from the surrounding circumstances.  Now, this

17 includes things like what the defendant said, what the

18 defendant did, how the defendant acted, and any other

19 facts or circumstances in evidence that show what was in

20 the defendant's mind.

21       You may also consider the natural and probable

22 results of any acts that the defendant knowingly did, and

23 whether it's reasonable to conclude that the defendant

24 intended those results.  Now, this, of course, is all for

25 you to decide.

1          Now, the indictment charges the defendant with

2   possessing a visual depiction of a minor engaged in

3   sexually explicit conduct.  For you to find the defendant

4   guilty of this crime, you must find that the government

5   has proved each and every one of the following elements

6   beyond a reasonable doubt.

7          First, that the defendant knowingly possessed

8   one or more matters containing a visual depiction.

9          Second, that the production of the visual

10  depiction involved the use of a minor engaging in sexually

11  explicit conduct.

12         Third, that the visual depiction was of a minor

13  engaging in sexually explicit conduct.

14         Fourth, that the defendant knew the visual

15  depiction involved a minor engaging in sexually explicit

16  conduct.

17         And, fifth, that the visual depiction had been

18  transported using any means or facility of interstate

19  commerce, or in or affecting interstate commerce; or that

20  the visual depiction was produced using material that had

21  been mailed, shipped, or transported in interstate

22  commerce by any means, including computer.

23         And now I'll give you more detailed instructions

24  on some of these terms.

25         To establish actual possession, the government

1  must prove that the defendant had direct, physical control

2  over the matter and knew that he had control of it.

3          But understand that just being present where

4  something is located does not equal possession.  The

5  government must prove that the defendant had possession of

6  the matter, and knew that he did, for you to find him

7  guilty of this crime.  Now, this, of course, is for you to

8  decide.

9          The term "visual depiction" includes data stored

10 on computer disk or by electronic means, which is capable

11 of conversion into a visual image; and data which is

12 capable of conversion into a visual image that has been

13 transmitted by any means, whether or not stored in a

14 permanent format.

15         The term "minor" means any person under the age

16 of 18 years.

17         The term "sexually explicit conduct" means

18 actual or simulated:

19         Sexual intercourse, including genital-genital,

20 oral-genital, anal-genital, or oral-anal, whether between

21 persons of the same or opposite sex;

22             Masturbation;

23         Lasivious exhibition of the genitals or pubic

24 area of a person.  In deciding whether an exhibition is

25 lasivious, you may consider these factors:

1          Whether the focal point of the visual depiction

2     is on the child's genitalia or pubic area;

3          Whether the setting of the visual depiction is

4     sexually suggestive, that is, in a place or pose generally

5     associated with sexual activity;

6          Whether the child is depicted in an unnatural

7     pose or in inappropriate attire considering the age of the

8     child;

9          Whether the child is fully or partially clothed

10    or nude;

11         Fifth, whether the visual depiction suggests

12    sexual coyness or a willingness to engage in sexual

13    activity;

14         And, sixth, whether the visual depiction is

15    intended or designed to elicit a sexual response in the

16    viewer.

17         This list is not exhaustive, and an image need

18    not satisfy any single factor to be deemed lasivious.

19         Instead, you must determine whether the visual

20    depiction is lasivious based on its overall context -- or

21    content, excuse me.

22         For you to decide the weight or lack of weight

23    to be given any of these factors -- I'm sorry.  It's for

24    you to decide the weight or lack of weight to be given to

25    any of these factors.

1              Now, next, the term "computer" means an

2    electronic, magnetic, optical, electro, chemical, or other

3    high-speed data processing device performing logical,

4    arithmetic, or storage functions, and includes any data

5    storage facility or communications facility directly

6    related to or operating in conjunction with such device.

7    But such term does not include an automatic typewriter or

8    typesetter, a portable handheld calculator, or other

9    similar device.

10             The term "in interstate commerce" means a visual

11   depiction or the production or transmission materials

12   crossed a state line.

13             The term, quote, means or facility within

14   interstate commerce, closed quote, includes the Internet

15   or telephone.

16             The phrase, quote, affecting, closed quote,

17   interstate commence means having at least a minimal affect

18   upon interstate commerce.

19             Now, the government is not required to prove

20   that

21             The defendant knew that the -- that a means or

22   facility of interstate commerce had been used when he

23   possessed the images;

24             The defendant was involved in any way in the

25   production of the visual depiction;

1    The defendant viewed the visual depiction, or

2 that the defendant's individual conduct substantially

3 affected interstate commerce.

4    If you are convinced that the government has

5 proved all of the elements that I've described, then say

6 so by returning a guilty verdict on this charge.  If you

7 have a reasonable doubt about any one of the elements,

8 then you must find the defendant not guilty of the charge.

9    Now, this concludes the part of my instructions

10 explaining the elements of the crime.

11    And next, I'll explain some rules that you must

12 use in considering some of the testimony and evidence.

13    You've heard the defendant testify.  Earlier I

14 talked to you about the credibility or believability of

15 the witnesses, and I suggested some things for you to

16 consider in evaluating each witness's testimony.  You

17 should consider those same things in evaluating the

18 defendant's testimony.

19    You heard the testimony of Hugh Thatcher, a

20 Special Agent with the Capitol Police, who testified to

21 both facts and opinions.  Each type of testimony should be

22 given the proper weight.

23    Regarding the testimony concerning facts,

24 consider the factors discussed earlier in these

25 instructions for weighing the credibility of witnesses.

1              Regarding the testimony concerning opinions, you

2    do not have to accept the witness's opinion.  In deciding

3    how much weight to give it, you should consider the

4    witness's qualifications and how he reached his

5    conclusions, along with the other factors discussed in

6    these instructions for weighing the credibility of

7    witnesses.

8              Remember that you alone decide how much of a

9    witness's testimony to believe, and how much weight you

10   think it deserves.

11             You've heard testimony that the defendant

12   possessed a visual depiction referred to as photo

13   number 2, which does not depict a minor engaged in

14   sexually explicit conduct, but may be probative of a

15   sexual interest in children.

16             If you find that the defendant possessed photo

17   number 2, you can consider it only as it relates to the

18   government's claim that the defendant knew he possessed,

19   or intended to possess, sexually explicit visual

20   depictions of minors, or that he did not possess such

21   image or images by mistake.  You must -- you must not

22   consider photo number 2 for any other purpose.

23             Remember that the defendant is on trial here

24   only for possessing a visual depiction of a minor engaged

25   in sexually explicit conduct.  Do not return a guilty

1  verdict unless the government convinces -- excuse me,

2  unless the government proves that the crime charged in the

3  indictment beyond a reasonable doubt.

4          You've heard that before this trial the

5  defendant was convicted of a crime.

6          The earlier conviction was brought to your

7  attention only as one way of helping you decide how

8  believable his testimony was.  You cannot consider it for

9  any other purpose.  It's not evidence that he's guilty of

10  the crime that he's on trial for now.

11          I have decided to accept as proved the fact that

12  Woodford County is located within the Eastern District of

13  Kentucky, even though no evidence was presented on this

14  point.  You may accept this fact as true, but you're not

15  required to do so.

16          The government and the defendant have agreed or

17  stipulated to certain facts.  You may accept those facts

18  stipulated as proved.  Or, excuse me, you must accept

19  those facts stipulated to as proved.

20          Now, that concludes the part of my instructions

21  explaining the rules for considering some of the testimony

22  and evidence.

23          Now let me finish up by explaining some of the

24  things about your deliberations in the jury room and your

25  possible verdicts.

1              After the parties' closing arguments have been

2 presented and you retire to the jury room to begin your

3 deliberations, the first thing that you should do is

4 choose someone to be your foreperson.  This person will

5 help guide your discussions, and will speak for you here

6 in court.

7              Once you start deliberating, do not talk to the

8 jury officer, or to me, or to anyone else except each

9 other about the case.  If you have any questions or

10 messages, you must write them down on a piece of paper,

11 sign them, and give them to the jury officer.  The officer

12 will give them to me, and I will respond as soon as I can.

13 I may have to talk to the parties about what you've asked,

14 so it may take me some time to get back to you.  Any

15 questions or messages normally should be sent to me

16 through your foreperson.

17              Also, the exhibits that were admitted into

18 evidence are available for your view.  They will be

19 delivered to you by the courtroom clerk as soon as we

20 recess.  You will also be provided with copies of the jury

21 instructions.

22              Now, one more thing about messages.  Do not ever

23 write down or tell anyone, including me, how you stand on

24 your votes.  For example, do not write down or tell anyone

25 that you're split 6-6 or 8-4, or whatever your vote

1  happens to be.  That should stay secret until you're

2  finished.

3          And remember that you must make your own -- make

4  your decision based only on the evidence that you saw and

5  heard here in court.

6          During your deliberations, you must not

7  communicate with or provide any information to anyone by

8  any means about this case.  You must not use any

9  electronic device or media, such as a cellphone, or

10  computer, the Internet, any Internet service, or any

11  social media website such as Facebook or Twitter to

12  communicate to anyone any information about this case or

13  to conduct any research about the case until I accept your

14  verdict.  In other words, you cannot talk to anyone on the

15  phone, correspond with anyone, or electronically

16  communicate with anyone about the case.

17          Your verdict, whether it's guilty or not guilty,

18  must be unanimous.

19          To find the defendant guilty, every one of you

20  must agree that the government has overcome the

21  presumption of innocence with evidence that proves his

22  guilt beyond a reasonable doubt.

23          To find him not guilty, every one of you must

24  agree that the government has failed to convince you

25  beyond a reasonable doubt.

1          Either way, guilty or not guilty, your verdict

2   must be unanimous.

3          Now that all of the evidence is in, and once the

4   arguments are completed, you are -- will be free to talk

5   about the case in the jury room.  In fact, it's your duty

6   to talk with each other about the evidence, and to make

7   every reasonable effort you can to reach unanimous

8   agreement.

9          Talk with each other, listen carefully and

10  respectfully to your -- to each other's views, and keep an

11  open mind as you listen to what your fellow jurors have to

12  say.  Try your best to work out your differences.  Do not

13  hesitate to change your mind if you are convinced that

14  other jurors are right and that your original position was

15  wrong.

16         But do not ever change your mind just because

17  other jurors see things differently, or just to get the

18  case over with.  In the end, your vote must be exactly

19  that, your own vote.  It's important for you to reach

20  unanimous agreement, but only if you can do so honestly

21  and in good conscience.

22         No one will be allowed to hear your discussions

23  in the jury room, and no record will be made of what you

24  say, so you should all feel free to speak your minds.

25         Listen carefully to what the other jurors have

1    to say, and then decide for yourself if the government has

2    proved the defendant guilty beyond a reasonable doubt.

3         If you decide that the government has proved the

4    defendant guilty, then it will be my job to decide what

5    the appropriate punishment should be.

6         Deciding what the punishment should be is my

7    job, and not yours.  It would violate your oaths as jurors

8    to even consider the possible punishment in deciding your

9    verdict.

10        Your job is to look at the evidence and decide

11   if the government has proved the defendant guilty beyond a

12   reasonable doubt.

13        I have prepared a verdict form that you should

14   use to record your verdict.  If you decide that the

15   government has proved the charge against the defendant

16   beyond a reasonable doubt, say so by having your

17   foreperson mark the appropriate place on the form.

18        If you decide that the government has not proved

19   the charge against the defendant beyond a reasonable

20   doubt, again, say so by having your foreperson mark the

21   appropriate place on the form.

22        Your foreperson should then sign the form, also

23   include your juror number, put the date on it, and return

24   it to me.

25        Now, let me finish up by repeating something

1  that I said to you earlier.

2           Nothing that I have said or done during this

3  trial was meant to influence your decision in any way.

4  You decide for yourselves if the government has proved the

5  defendant guilty beyond a reasonable doubt.

6           And remember that if you elected to take notes

7  during the trial, your notes should be used only as memory

8  aids.  You should not give your notes greater weight than

9  your independent recollection of the evidence.  You should

10 rely upon your own independent recollection of the

11 evidence, or lack of evidence, and you should not be

12 unduly influenced by the notes of other jurors.  Notes are

13 not entitled to anymore weight than the memory or

14 impression of each juror.

15          Whether you took notes or not, each of you must

16 form and express your own opinions as to the facts of the

17 case.

18          Now, at the end of the set of instructions that

19 I have just read for you, there will be a verdict form.

20 Now, this verdict form, as I mentioned earlier, will not

21 be attached to the additional copies that will be sent

22 back for your use, but it will be on the copy that I just

23 read.

24          And the verdict form simply reads as follows --

25 it's a one-page document, and it states:

1          We, the jury, unanimously find as follows:

2          With respect to the charge in the indictment

3   that Defendant Scott W. Sulik possessed a visual depiction

4   involving the sexual exploitation of a minor, we, the

5   jury, find the defendant; either guilty or not guilty.

6          There is then a separate question that you'll be

7   asked.  It reads as follows:

8          If you find the defendant guilty of the offense

9   charged, do you also find unanimously that one or more of

10  the visual depictions involved in the offense involved a

11  prepubescent minor or a minor who had not attained

12  12 years of age?

13         And if you do find the defendant guilty, then

14  you will need to respond to this question; either yes or

15  no.

16         At the bottom of the page there's a line for the

17  foreperson to place his or her name, number, jury number,

18  and also the date.  Today is February 13th.

19         I will tell you that before this form is

20  actually filed in the record that a sealed copy will be

21  filed, but the foreperson's name will be redacted from the

22  form that will appear in the public record.  So the

23  foreperson's name will not appear in the record.

24         All right.  Let me see if there's any objection

25  to the instructions as read to the jury before we proceed

1    with closings.

2              MR. BOONE:  No objection, Your Honor.

3              THE COURT:  No.

4              Ms. Ledgewood.

5              MS. LEDGEWOOD:  No, Your Honor.

6              THE COURT:  All right.  I will note for the

7    record, I noticed one typographical error with regard to

8    Mr. Thatcher's name, and so I made that correction by

9    adding a T to his name in my copy, and that will not

10   appear in those extra copies that the jury will receive.

11             MR. BOONE:  Thank you.

12             THE COURT:  All right.  And parties are ready

13   for their closings; is that correct?

14             MR. BOONE:  Yes, sir.

15             THE COURT:  All right.  Mr. Boone, you may

16   proceed.

17             MR. BOONE:  Thank you.

18             May it please the Court.

19             THE COURT:  Mr. Boone.

20             MR. BOONE:  Ms. Ledgewood.

21             MS. LEDGEWOOD:  Mr. Boone.

22             MR. BOONE:  Ladies and gentlemen of the jury,

23   good morning.

24             Thank you for the time that you've given us

25   yesterday and today.  I know that you-all have busy lives,

1  and it's an interruption to sit here and participate in a

2  trial.

3         I know that this has been a difficult trial,

4  difficult subject to handle, some difficult exhibits to

5  look at, and we all appreciate the attention that you paid

6  to the evidence.  It's an important case, and your role

7  here is extremely important.

8         When we began yesterday, I told you that the

9  government would present evidence that Mr. Sulik possessed

10  three sexually explicit photos of children, and now it's

11  my responsibility to summarize that evidence.

12         The indictment charges Mr. Sulik with one count

13  of possessing these sexually explicit images.

14         Judge Reeves has just instructed you about the

15  elements of that crime.  As the jury, it's your

16  responsibility now to determine whether the evidence has

17  established each of those elements.

18         My suggestion is to ask yourself, ask

19  yourselves, five questions.  I'll walk through them.

20         Consider the evidence that's responsive to those

21  five questions, and my suggestion is that will give you

22  the answers that you'll need.

23         The first question is did Mr. Sulik use either,

24  or both, of the electronic devices that contained the

25  explicit photos?

1          Number 2, did Mr. -- or did either, or both, of

2    those devices contain a photo of a minor engaged in

3    sexually explicit conduct?

4          Number 3, did the production of any, or all, of

5    those images require a minor to participate in sexual

6    behavior?

7          Number 4, did any, or all, of those photographs

8    move through interstate commerce, or affect interstate

9    commerce?

10          And, number 5, did Mr. Sulik know that any, or

11   all, of these photos on these devices involved minors

12   engaging in sexually explicit conduct?

13          Let's talk about the evidence that addresses

14   each of those questions.

15          First, did Mr. Sulik use the electronic devices?

16   You heard testimony about -- and evidence about two

17   pertinent devices; an LG smartphone, and we've referred to

18   that as device 2 throughout the case, and a Lenovo

19   ThinkPad laptop computer.  We have referred to that as

20   device 3 throughout the case.  And we presented evidence

21   that the defendant used both devices.

22          You heard Special Agent Thatcher's testimony

23   that he conducted some forensic examinations of each

24   device, and he found evidence on each device that

25   Mr. Sulik was using them.

1          For example, the phone had a picture of
2    Mr. Sulik's credit card on it.  The phone that belonged to
3    Mr. Sulik's wife had his name saved in it, alongside the
4    phone number for device 2.  The laptop contained evidence
5    of trading activity, which was Mr. Sulik's occupation.
6    And there were evidence of emails on that device to and
7    from the gmail address stealthvadertrader@gmail.com, which
8    Mr. Sulik used.
9          And, of course, Mr. Sulik testified yesterday,
10   and he admitted that he used both devices.
11         So there's plenty of evidence from which you
12   could conclude that Mr. Sulik possessed device 2 and
13   device 3 on or in about the date that his home was
14   searched on January 10th, 2017.
15         The second question, did either or both of these
16   devices contain a visual depiction of a minor engaging in
17   sexually explicit conduct?
18         Now, we viewed three photographs in court
19   yesterday; Exhibit 1, Exhibit 3, and Exhibit 4.  And
20   so you'll have to consider the -- that evidence,
21   Agent Thatcher's testimony about that evidence, and the
22   Court's instructions about what constitutes a minor
23   engaging in sexually explicit conduct.
24         Per the instructions, a minor is anyone under
25   the age of 18 years.  So to return a verdict of guilty you

1  have to find that at least one of these photographs

2  involved a child under 18 years of age.  And if you

3  determine that, as Judge Reeves told you, there's one more

4  question.  Is any of these children under the age of 12 or

5  prepubescent?  You don't have to answer that second

6  question affirmative to return a verdict of guilty, but

7  you do have to answer it if you do find that the defendant

8  is guilty of the offense.

9          The evidence that we displayed was all of the

10  photos involved a minor child.  All of the photos involved

11  a girl under the age of 18, and at least two of them were

12  under the age of 12.

13          Agent Thatcher testified about each photo based

14  on his extensive training, experience in these types of

15  cases.  He estimated for you that the girl depicted in

16  Exhibit 1 was between three and five years age.

17          The girl depicted in Exhibit 3 was also between

18  three and five years of age.

19          And the girl pictured in Exhibit 4 was between

20  11 and 13 years old.

21          Mr. Sulik's testimony yesterday agreed that

22  these were children in these photos.  You've seen the

23  photos.  You can draw on your own life experiences and

24  common sense to reach the same conclusion that children

25  were involved in these photos.

1           Now, you also have to determine whether the

2    children were engaged in sexually explicit conduct,

3    whether that was depicted in the photographs.

4           Again, based on the instructions that you were

5    given that would include simulated sex acts like oral sex

6    and masturbation.

7           Exhibit 1 can be seen as either of those things.

8    That was the first photograph that you saw yesterday.

9           Sexually explicit conduct also includes

10   lasivious exhibition of the child's genital area.   In

11   other words, was the focal point of the picture on the

12   minor's -- on the child's genitals, or was the picture

13   intended to be sexually suggestive?   Was the child

14   partially undressed?   Is she in an unnatural pose?

15          You've seen Exhibit 3 and Exhibit 4.   You saw

16   the way the children in those pictures were posed.   You

17   saw that they were undressed.   You saw that they were made

18   to display their private parts for the camera.   That's --

19   these are not things any of us want to dwell on, but you

20   should consider these facts to conclude that these were

21   sexually explicit photographs.

22          The third question that you'll have to answer is

23   whether the production of any or all of these photographs

24   required a minor to do something sexually explicit.

25          Special Agent Thatcher testified that he's

1    participated in many of these investigations.  He's

2    trained to differentiate fake photographs and photos of

3    real children.

4            And as he testified about each of the three

5    photographs yesterday, he told you that he observed

6    nothing about any of them that would suggest that they

7    were fake, that they were digitally enhanced.

8            All of the evidence before you suggest that

9    someone made a child pose in a revealing, suggestive way

10   for a camera to put these children on display for their

11   own sexual gratification.

12           Now, that's not Mr. Sulik.  There's no

13   allegation, there's no evidence, that he took these

14   photos, that he produced any child pornography.  But to

15   return a guilty verdict you don't have to find that he

16   made these photographs.  You don't have to find that he

17   shared.  You don't even have to find that he looked at

18   them.  Even though I think -- I believe and I submit to

19   you that there's evidence that he did look at them.

20           Remember this case is about knowing possession

21   of the photographs.  That's the question before you.

22           And before I get to that, the fourth question

23   that you'll have to address is whether these photographs

24   traveled in interstate commerce.

25           I'd submit this question is very

1  straightforward.  Device number 2, the phone, had

2  Exhibit 1 and Exhibit 3 stored on it.

3         Agent Thatcher testified that based on the

4  metadata that he reviewed and that is summarized for you

5  in the table that he prepared, Exhibit 5, Exhibit 1 and

6  Exhibit 3, those two photographs were downloaded over the

7  Internet.  You've all had plenty of experience with the

8  Internet.  It's an interstate network of servers and

9  websites and communication facilities.  It is almost by

10  definition interstate commerce.  If an individual

11  downloads a file over the Internet, that file, that

12  photograph has traveled in interstate commerce.

13         Device number 3, the laptop, had one picture on

14  it, Exhibit 4.  Again, Special Agent Thatcher's table

15  shows that this picture was downloaded to the laptop on

16  August 29th, 2017.

17         Mr. Sulik testified yesterday and admitted that

18  he lived in Arizona.  He owned the laptop at the time, and

19  that he brought the laptop with him to Kentucky when he

20  moved in November.  The image, the photograph, was on the

21  laptop and traveled with him in interstate commerce to

22  Kentucky.

23         So the evidence is more than enough to answer

24  the interstate commerce question.

25         The last question that you will have to address

1  under the elements of this offense is really, I think,

2  what this trial is all about.  What did Mr. Sulik know

3  that his devices contained photographs of minors engaging

4  in sexually explicit conduct?  I just want to refer you to

5  a few things that you heard yesterday that will help you

6  answer that question yes.

7        Look at the dates that the files were

8  downloaded.  Again, refer back to the table that

9  Agent Thatcher prepared.  Mr. -- or the -- the files,

10 Exhibit 1 and Exhibit 3, those photographs were downloaded

11 to the phone on November 13th, 2017, about 16 minutes

12 apart from each other.

13        And ask yourself someone -- if one of these

14 files accidentally downloaded, would you go back and

15 download another one 16 minutes later?  That just doesn't

16 make any sense.  Everything is consistent with intentional

17 download.

18        Six weeks later the third file that was on the

19 phone, the one that's not sexually explicit, but is

20 suggestive, that one was downloaded on December 24th,

21 six weeks after the first two over again, that's not

22 consistent with a mistake.  That is entirely consistent

23 with intentional possession.

24        Now, as Judge Reeves instructed you, Exhibit 2,

25 that photograph, is not evidence.  It's not -- that's not

1  the violation of self-possessing that photograph.  It

2  doesn't involve a stimulated sex act.  It doesn't involve

3  exhibition of the child's genital area.  It's the one of

4  the six- to eight-year-old girl posed in a sexually

5  suggestive way in her underwear.  It is evidence of

6  interest in children, and you can use it as evidence that

7  Mr. Sulik knew what he was getting when he downloaded the

8  other two photographs.

9        Beyond that, if you want to know whether

10  Mr. Sulik knew what was on his phone, consider his

11  statement to the police after he was arrested.  Recall

12  that Agent Anyaso took and asked him some routine booking

13  questions after they executed the search warrant.  Asked

14  him the simple question, what's your phone number?  And

15  you saw it on video.  You saw Agent Anyaso testify about

16  it yesterday.  Mr. Sulik's response was I don't have a

17  phone.  That was untrue.

18        I'd suggest to you that Mr. Sulik panicked when

19  asked that question, and he lied in response to that

20  question, because he knew exactly what was on that phone,

21  and he knew it was going to be searched.

22        Let's talk about Exhibit 4, the one found on the

23  computer.  It was downloaded.  The evidence is that it was

24  downloaded in August 2017.  And Agent Thatcher testified

25  that he found another piece of data on the computer to

1  show that the file was accessed a few weeks later, in

2  September 2017.  He testified that that was consistent

3  with the file being downloaded, and looked at and viewed a

4  few weeks later.  So you can conclude from that that

5  Mr. Sulik knew that he had a sexually explicit image on

6  his computer.

7          It was also disguised.  It was concealed.

8  Recall that the file was found in a folder that the user

9  of the computer had created.  This was not a folder that

10 existed on the computer when it was bought, when it was

11 made.  It was a user created folder called Kawasaki, and

12 it was made to look like it contained pictures of

13 motorcycle parts, Kawasaki accessories.  And the file

14 itself, the pornographic image, was labeled accessories

15 and then the number 10 in parentheses.  If anybody even

16 just looking through the computer without looking at the

17 images, they would have just assumed or they might have

18 just assumed that this was a photo of a motorcycle part.

19 It was really a sexually explicit photo of a child.  It

20 was concealed, and that is further evidence that Mr. Sulik

21 used the computer.  The file on the computer was

22 concealed.  The file contained sexually explicit image of

23 a child.  From that you can conclude that he knew exactly

24 what it was.

25          Ladies and gentlemen, I'm going to be brief

1    again because this has been a short case.  I'm going to

2    have one more opportunity after Ms. Ledgewood speaks to

3    you, I'll have one more opportunity to address the

4    evidence with you.

5            But I would just again submit that if you

6    consider those five questions and consider the evidence

7    that I've summarized, you'll find all that you need to

8    return a verdict of guilty.

9            Thank you.

10           THE COURT:  All right.  Thank you, Mr. Boone.

11           You may reserve the balance of your time.

12           Ms. Ledgewood.

13           MS. LEDGEWOOD:  Thank you, Your Honor.

14           Judge Reeves.

15           THE COURT:  Ms. Ledgewood.

16           MS. LEDGEWOOD:  Mr. Boone, ladies and gentlemen

17   of the jury, Mr. Sulik.

18           In going through the instructions, I want to

19   focus just on a few of them for you.  Your obligations of

20   juror -- as jurors began when you raised your hand and

21   took the oath yesterday morning.  By taking that oath you,

22   without maybe thinking in these terms, made a commitment

23   to our American system of justice, and that oath said in

24   part, that you would look at things that you did not want

25   to see, and you would listen to things that you did not

1  want to hear.  But you said I can do it, I can fulfill my

2  role as a citizen.

3          And for that all of us thank you very much.

4          The definition of reasonable doubt is extremely

5  important.  It's important for lawyers in a couple of

6  ways.  Some of the -- some of the lawyers, specifically

7  defense counsel, and not just an individual defense

8  counsel, but most of us, practice both in the state court,

9  and in the federal system.  And if you were jurors across

10 the street in the Fayette District or Fayette Circuit, you

11 would find out very quickly that lawyers are not able to

12 define reasonable doubt there.

13          In fact, if His Honor were presiding over a

14 state trial and I began to go into a definition of

15 reasonable doubt, I would be in big trouble with the

16 Court, because those aren't the state laws.

17          But under our federal instructions, you're

18 actually given some guidance on reasonable doubt.  And it

19 is in part proof which is so convincing that you would not

20 hesitate to rely and act on in making the most important

21 decisions in our own lives.

22          So the most important decisions in everyone's

23 own lives are really probably defined on an individual

24 basis.  What are some common, just important decisions in

25 our own life?

1          Well, for example, my child needs surgery.  I've

2    narrowed it down to two doctors.  Which one do I go with?

3    They're both excellent.  They're both experienced.  Which

4    one do I decide?  That certainly is one of the most

5    important decisions one could make in one's life.

6          My spouse has a job offer.  It's going to mean

7    that a lot more money, but it's going to mean that we're

8    going to pick up from Kentucky where we've lived our whole

9    lives, where we have friends, we have family of deep

10   roots, and we're going to move to Indiana, not that far

11   away but still some distance from what we know.  That is

12   an important life decision.  That's an extremely important

13   decision.

14         And how will you make those life decisions or

15   any other important life decision?  Well, you're going to

16   sit down, and you're going to weigh the evidence, and

17   you're going to weigh the pros and cons, and you're going

18   to talk about, well, this is more money, but on the other

19   hand my mother is not doing well, I need to stay here.

20   You're going to sort through pros, cons, various matters,

21   and you're going to come to a decision.

22         And that is a way of looking at reasonable

23   doubt.  And each of you certainly has your own examples of

24   that.

25         Then we look at the specific instruction that

1   Your Honor has given you about the elements of the crimes.

2   He must not just knowingly possess it.  He must know what

3   it involves.  He must know that it involves a minor

4   engaging in sexually explicit conduct.

5            Sometimes prosecutors tell jurors, and there's a

6   good reason they do, because it's true.  They tell jurors

7   that if all it took to be found not guilty was for

8   somebody to get on the stand and say I didn't do it,

9   nobody would ever be found guilty.  And that's an

10  excellent point.  Prosecutors are exactly right when they

11  say that.  Let me join those prosecutors wherever they are

12  in echoing that.  That is exactly right.

13           And that leads me back to Mr. Sulik's testimony

14  yesterday, what to make of it.  Your instructions tell you

15  different factors.  It tells you for one thing that once a

16  defendant decides to give up his right not to testify and

17  get on the stand, you get to judge his credibility, just

18  like you judge any other witness's credibility.  And we

19  know that, and we appreciate that.

20           But specifically what to make of that testimony.

21  It was raw, it was unpracticed, it was not to put -- not

22  to be overly dramatic.  It was a cry from the very depths

23  of his sole.

24           It is clear that he is a proud man.  He is

25  proud, as he should be, of his service to this country.

1  Although, that should make no difference to anybody but

2  him and those who love him.  The instructions make clear

3  do not let bias, do not let prejudice.  But as you assess

4  him, that clearly is a big part of who he is.  He is

5  deep -- so deeply entrenched in his views that he waived

6  not just his protection to stay off the stand, but he

7  actually opened up things about his past that you wouldn't

8  have known.  He shared with you effectively.  Not only

9  does he have a prior criminal conviction, but he talked to

10  you about what that's about.

11         Why did he do that?  That's for you to decide,

12  if you can.  You may never decide it.  But it certainly is

13  an extremely important way of assessing who he is and his

14  credibility.

15         And when Mr. Boone asked him about the images,

16  about knowingly possessing them, he said -- if I remember,

17  if I had this down correctly.  "If I did it, I don't think

18  I could live with myself."  Again, what that means is for

19  you to decide.

20         But to find him not guilty requires you to think

21  about images you did not wish to see, and testimony that

22  you did not wish to hear.

23         It requires you to consider that two decent,

24  skilled, honorable Capitol Police may have missed

25  something in their analysis and their investigation.

1           In short, it requires you to also do what the

2    late State Court Judge Jim Keller used to tell jurors.  We

3    in the Court system keep the easy decisions for ourselves

4    and give the hard ones to you.

5           Ladies and gentlemen, it is within that spirit

6    that gets you on your way to making your hard decisions.

7           Thank you, ladies and gentlemen.

8           THE COURT:  All right.  Thank you, counsel.

9           And, counsel, if you could just come up for just

10   one moment before rebuttal argument.

11      (Whereupon, a bench conference was had with the Court

12   and counsel out of the hearing of the open court, and

13   juror members, as follows.)

14           THE COURT:  Mr. Boone, your initial argument I

15   think you may have misspoken when you referred to the date

16   of the arrest.  I don't know if you noticed it.

17           MR. BOONE:  Did I say January 10th?

18           THE COURT:  You said January 10th, 2017.

19           MR. BOONE:  I think that's correct.

20           THE COURT:  As opposed to 2018?

21           MS. LEDGEWOOD:  No, it was '18.

22           MR. BOONE:  '18, I'm sorry.  I'll make that

23   correction.  Thank you.

24           THE COURT:  I didn't think you -- I just wanted

25   to make sure there wasn't any confusion.

1          MR. BOONE:  Thank you.

2          MS. LEDGEWOOD:  Thank you, sir.

3          THE COURT:  Thank you.

4     (Whereupon, the bench conference concluded.)

5          THE COURT:  All right.  Thank you.

6          Mr. Boone, you have, according to my notes,

7  seven minutes remaining.

8          MR. BOONE:  Thank you, Your Honor.

9          THE COURT:  Yes, sir.

10         MR. BOONE:  Ladies and gentlemen, I won't take

11  seven minutes of more of your time.

12         Before I begin, one quick note.  In my previous

13  remarks to you, I said that Mr. Sulik's -- the date of

14  Mr. Sulik's arrest, the date of the search at his house

15  was January 10th, 2017.  I was wrong.  It was January

16  10th, 2018.  So I'm wrong occasionally -- like often.

17  Please don't hold that against me.

18         So with that correction in mind, please also

19  consider this.  Ms. Ledgewood talked to you a little bit

20  about reasonable doubt and did make the -- did concede the

21  point that we sometimes make that if all it took would be

22  for a defendant to get up on the stand and say I didn't do

23  it, nobody would ever get convicted.  That denial was not

24  sufficient to create reasonable doubt.

25         What you should consider is whether any specific

1  factor that Mr. Sulik testified about raises that

2  reasonable doubt in your minds.

3          Did Mr. Sulik give you an explanation for the

4  presence of these images on these devices that you found

5  reasonable?

6          Mr. Sulik testified that he really had no

7  explanation for the presence of exploited images of

8  children on his phone.  He said that he had bought the

9  phone from a Best Buy or a Walmart as a used prepaid

10 phone, and they must have been on there when he bought

11 them.

12          Is it reasonable to assume that a company like

13 Best Buy or Walmart is selling sexually explicit images of

14 children on its devices?

15          Or based on your common sense and your

16 experience, if you bought a prepaid phone from one of

17 these big companies, would they have taken steps to

18 perhaps wipe the memory and take precautions against

19 things of that nature?  Consider that in light of your

20 experience.

21          Also consider the dates again.  Mr. Sulik bought

22 the phone in Arizona, had an Arizona area code.  He

23 testified, he admitted that he bought it in Arizona.  He

24 moved out of Arizona, and the evidence was, I believe,

25 November 2nd, 2017, that he moved away from the RV resort

 1   in Mesa, Arizona.   Pictures were downloaded to the phone

 2   November 13th, 2017, Exhibits 1 and 3 were.   Exhibit 2 was

 3   downloaded to the phone in December 2017, long after he

 4   had purchased the phone.

 5            So I submit to you that his testimony did not

 6   raise reasonable doubt there.

 7            If you need more evidence to consider that he

 8   had another image on an entirely separate device that he

 9   used, again, I talked to you about how that image was

10   disguised, how the file name was altered in a way to make

11   it seem that the image was a motorcycle part.   You can

12   consider all that.

13            Two images -- or two devices, each of which

14   contained sexually explicit images of children downloaded

15   on different dates, one of which there's evidence it was

16   opened on different dates.   All of that is sufficient to

17   prove beyond a reasonable doubt that Mr. Sulik knew

18   exactly what was in these images.

19            Thank you, ladies and gentlemen.

20            THE COURT:   All right.   Thank you.

21            Thank you, counsel.

22            Ladies and gentlemen, let me just give you a

23   couple of other procedural instructions before you go back

24   to begin your deliberations.

25            First, our alternate juror will be excused at

1  this time, Juror Number 738.

2          The admonition remains in effect not to discuss

3  the case with anyone until a final decision has been

4  reached.  As soon as the decision is reached, you'll be

5  notified by the clerk, and at that point the admonition

6  will be lifted, and you can speak about the case if you

7  want to do so.  You're not required to.

8          And if anyone should ever approach you to

9  discuss the case and you choose not to talk about it,

10  that's all you have to do, is advise that you choose not

11  to talk about the matter, and you can notify the Court if

12  necessary.

13          The reason that we keep the admonition in place

14  until a decision has been reached is if we were to have a

15  juror that were to become ill or couldn't finally

16  participate in reaching a verdict, we might have to call

17  you back in and start the deliberations anew.

18          So out of an abundance of caution, don't discuss

19  the case until we notify you that a final decision has

20  been reached.

21          If you do have materials in the jury room, you

22  can pick up those materials before deliberations begin.

23          And you can leave your notebook with the clerk,

24  and she'll impound that notebook until a final decision

25  has been reached.  And at that point any notes would be

1   destroyed.

2          Next, I want to advise all of our jurors when

3   you do begin your deliberations, you can only deliberate

4   while everyone is present.  So if you do need to take a

5   bathroom or other breaks, then please stop your

6   deliberations until everyone is present in the room.

7          If you choose to deliberate today through the

8   lunch hour, I will tell you it takes a good hour to get

9   lunch here.  And so if you do feel like you want to

10  deliberate through noon and you want to continue to

11  deliberate and have your lunch brought in, give us

12  about -- at least about an hour notice, and we'll send

13  menus back, and you can make your selection, and we'll

14  have that lunch ordered for you.  Of course, if you choose

15  not to, if you want to go out for lunch, or if you finish

16  before lunch, then that would not be necessary.

17         Again, you will have extra copies of the jury

18  instructions that were read to you earlier.  The only copy

19  that will have the verdict form will be the one that I'm

20  giving -- the one I read from and has the clip at the top.

21  The others will be stapled for your use, and you'll also

22  receive copies of all of the exhibits.

23         Mr. Boone, earlier I had asked about making

24  copies of Exhibits 1 through 4, which were shown

25  electronically yesterday.  Do you have those exhibits?

1             MR. BOONE:  I have those exhibits, Your Honor,

2    and they're printed out.  They're the thumbnail images so

3    they printed out kind of small so I would also like to

4    offer at this time Exhibits 1A, 2A, 3A, and 4A.

5             THE COURT:  All right.  Those are substitute

6    exhibits by agreement.

7             Is that correct, counsel?

8             MR. BOONE:  Yes.  Those are just slightly bigger

9    versions.

10             THE COURT:  All right.  Those will be submitted.

11   If you're not able to view those that are being submitted,

12   those copies, if you need to look at the electronic

13   version, you'll need to come back into the courtroom to do

14   that, so we can do that on the devices that are present.

15             So with those instructions, ladies and

16   gentlemen, you'll be excused at this time to begin your

17   deliberations.

18             We'll wait until our -- we'll just wait until

19   our alternate juror leaves.

20             Let's leave the door open until the alternate

21   juror leaves so she can get her materials.

22             Thank you again.

23        (whereupon, the alternate juror member leaves the

24   courtroom, and the juror members leave the courtroom at

25   10:00 a.m. to begin jury deliberations.)

1          THE COURT:  All right.  Let's see if we have any

2 other issues to take up before we recess.

3          MR. BOONE:  No, Your Honor.

4          THE COURT:  No?

5          MS. LEDGEWOOD:  No, Your Honor.

6          THE COURT:  All right.  We will be in recess to

7 await the verdict of the jury.

8      (Whereupon, a recess was taken at 10:05 a.m., and

9 Day 2 of the Jury Trial proceedings continued at

10 11:55 a.m., on the record in open court, without the

11 juror members present, as follows.)

12          THE COURT:  All right.  Thank you.

13          The record will reflect that the defendant and

14 counsel are present.

15          The jury is not present at this time.

16          The jury submitted a question that reads as

17 follows:

18          "Exhibit 5 on device 3, Exhibit 4.  What is the

19 difference between date modified and date changed?"

20          It has the foreperson's number, dated today, and

21 name.

22          Exhibit 5 is the document that has metadata

23 summary.  And the reference to Exhibit 4 on that exhibit,

24 Exhibit 5, is the information from the Lenovo ThinkPad

25 computer.

1              In determining whether to reread testimony, the

2    Court is guided by Pattern Jury Instruction 9.02, and the

3    cases that are cited in the commentary following that

4    particular instruction indicate that the Court should

5    consider the nature of the jury's question, specifically

6    under the Harvey case.  If the jury has questions of fact,

7    it's not always a better response to review the

8    question -- or the information with the jury.  But if the

9    question of fact is specific -- specifically the question

10   of fact is, in general terms, involves disputed facts, or

11   obviously related to credibility determinations, there's a

12   concern that by rereading testimony, it may usurp the

13   jury's fact-finding role.

14              However, if the question of fact is very

15   specific and definitive answers can easily be located in

16   the record, then rereading the testimony facilitates

17   rather than usurps the jury's role.

18              That would appear to be the case here with

19   regard to the question that has been presented, inasmuch

20   as the jury is specifically asking about information that

21   was testified to by Special Agent Thatcher.

22              I asked the court reporter to locate the

23   specific area of his testimony discussing this particular

24   exhibit, and the column that is referenced here, which

25   would be date modified and date changed.

1          I'll ask the reporter to read, which I believe

2   from her draft is beginning at about page 109, line 22,

3   and going over to page 111.

4          So at this time I'll ask the court reporter to

5   read that section, and then I'll inquire from counsel as

6   to whether you believe it would be appropriate to read

7   this section to the jury in response to their question.

8      (Whereupon, the court reporter read the testimony in

9   open court, without the juror members present.)

10         THE COURT:  Mr. Boone, would you like -- is it

11  your position that section read by the court reporter

12  should be reread to the jury?

13         MR. BOONE:  Yes, Your Honor.  And I think that

14  the factors that you listed in the Harvey case are

15  applicable here.  It's a discreet, factual question, and

16  reading that portion of the transcript does seem to answer

17  that.  I can't imagine it's going to have an impact on the

18  jury's view on the witness's credibility.

19         THE COURT:  All right.  Thank you.

20         Ms. Ledgewood.

21         MS. LEDGEWOOD:  I can't disagree, Your Honor.

22         THE COURT:  All right.  I will first give the

23  jury the cautionary instruction before asking the

24  court reporter to reread those sections that I have just

25  referenced.

1          We'll bring the jury in.

2      (Whereupon, the juror members enter the courtroom.)

3          THE COURT:  All right.  Thank you and be seated.

4      The record will reflect the jury is present at

5  this time.

6          Ladies and gentlemen, I have received your

7  question that reads as follows:

8          "Exhibit 5 on device 3, Exhibit 4, what is the

9  difference between date modified and date changed?"

10          The note does have the -- I assume the

11  foreperson's number and also the name, dated today.

12          I'm going to have the court reporter now read a

13  portion of Special Agent Thatcher's testimony that was

14  provided to you yesterday.

15          Please keep in mind that you should consider

16  this testimony, together with all of the other evidence in

17  the case.  Do not consider it by itself out of context.

18  Consider all of the evidence together as a whole.

19          And at this time I'm asking the -- or I will ask

20  the court reporter to read from her transcription portions

21  of Special Agent Thatcher's testimony.

22          I believe beginning at approximately page 108,

23  line 22, continuing through page 111.

24      (Whereupon, the court reporter read the testimony in

25  open court, with the juror members present.)

 1                THE COURT:  Thank you.

 2                Ladies and gentlemen, at this time you will be

 3    directed to go back and continue with your deliberations.

 4                I do understand that you've asked for menus, and

 5    we'll have some menus provided to you so you can order

 6    your lunch.  As I advised you earlier, it will probably

 7    take about an hour to get your lunch here.

 8                So at this time the jury will be excused to

 9    continue with their deliberations.

10        (Whereupon, the juror members leave the courtroom to

11    continue jury deliberations.)

12                THE COURT:  All right.  Thank you.

13                We will again be in recess to await the verdict

14    of the jury.

15        (Whereupon, a recess was taken at 12:15 p.m., and

16    Day 2 of the Jury Trial proceedings continued on the

17    record in open court,

18

19        (Whereupon, a recess was taken at 12:15 p.m.,

20    and Day 2 of the Jury Trial proceedings continued at

21    3:10 p.m., as follows.)

22                THE COURT:  All right.  Thank you.

23                Received a note indicating that the jury has

24    reached a verdict in the case.  We'll bring the jury in at

25    this time.

1              (Whereupon, the juror members enter the courtroom.)

2                     THE COURT:  Thank you, and please be seated.

3                     The record will reflect that all members of the

4    jury are present.

5                     Defendant and counsel are present in the

6    courtroom.

7                     I have received your note that you've reached a

8    verdict.

9                     Is that correct?

10                    JUROR FOREMAN 824:  Yes.

11                    THE COURT:  All right.  If you would please pass

12   the verdict form to me, please.

13                    Thank you.

14                    And, Madam Clerk, I'll ask you to announce the

15   verdict of the jury.

16                    THE CLERK:  Yes, Your Honor.

17                    THE COURT:  Would the defendant please stand?

18                    THE CLERK:  We, the jury, unanimously find, with

19   respect to the charge in the indictment, that Defendant

20   Scott W. Sulik possessed a visual depiction involving the

21   sexual exploitation of a minor, we find the defendant

22   guilty.

23                    We also find that one or more of the visual

24   depictions involved in the offense involved a prepubescent

25   minor or a minor who had not attained 12 years of age?

1              Yes.

2              Signed by the jury foreperson, number 824, on

3    February 13, 2019.

4              THE COURT:  All right.  Thank you.

5              Please be seated.

6              Would the parties wish to poll the jury at this

7    time?

8              MR. BOONE:  No, Your Honor.

9              THE COURT:  Thank you.

10             Ms. Ledgewood.

11             MS. LEDGEWOOD:  No, Your Honor.

12             THE COURT:  All right.  Ladies and gentlemen of

13   the jury, at this time your work in this case has been

14   completed.  This has been a relatively short trial.  I do,

15   however, appreciate your attention to the case.

16             Appearing here, as you know, is very important.

17   These cases are difficult, as I'm sure that you-all are

18   aware, but you certainly paid close attention.  I

19   appreciate that, and I'm sure the parties do as well.

20             At this time you'll be relieved from any further

21   responsibility in the case.

22             When you leave, if you want to take your notes,

23   you're welcome to take your notes with you.  If you don't,

24   if you want to leave those, either in the chair or back in

25   the deliberation room, we will take those, and those will

1    be shredded.  So there's not -- those will not be

2    maintained.

3              Earlier I had given you an admonition about not

4    discussing the case.  The admonition is now lifted.  If

5    you want to discuss the matter, you're free to do so, but

6    you're not required to do so.

7              So, again, as you heard me advise the alternate

8    this morning, if you want to talk with friends or family

9    about the case, you can certainly do that.

10             But if anyone should ever approach you in an

11   effort to have you discuss the case and you choose not to,

12   you should contact the clerk's office and allow the Court

13   to deal with that.

14             So again, with the thanks of the Court, if you

15   could leave your badges.  If you want to leave your

16   notebooks, I told you that those notes will be shredded.

17   But if you want to take those with you, you're certainly

18   welcome to do that as well.

19             Does anyone have any jackets or anything back in

20   the deliberation room?

21        (Affirmative responses)

22             THE COURT:  I'll let you go back.  At this time

23   you can retrieve those materials, and then at that point

24   you will be excused.

25             Thank you.

1           (Whereupon, the juror members leave the courtroom.)

2               THE COURT:  All right.  Thank you, and please be

3    seated.

4               The jury having returned a verdict of guilty to

5    the sole count of the indictment in Lexington Criminal

6    Action Number 18-20, I will set a sentencing date for the

7    defendant for here in Lexington on Friday, May 24th,

8    beginning at 9:30 a.m.

9               Let me allow counsel to check their calendars

10   and make sure that there's not a conflict on that date.

11              MR. BOONE:  No conflict, Your Honor.

12              THE COURT:  Ms. Ledgewood.

13              MS. LEDGEWOOD:  No conflict, Your Honor.

14   Thank you.

15              THE COURT:  All right.  Thank you.

16              I will provide the sentencing order to the clerk

17   for filing.

18              Are there any other issues to take up in the

19   case at this time?

20              MR. BOONE:  No, Your Honor.  I believe my office

21   will submit a preliminary order of forfeiture.

22              THE COURT:  All right.  The exhibits, of course,

23   that are filed in the record, Exhibits 1 through 4, will

24   remain under seal for review if they are needed with

25   regard to any appeal.

 1          MR. BOONE:  Thank you.

 2          THE COURT:  All right.  The -- as I have

 3   indicated, the foreperson's name will be removed from the

 4   verdict form, but the original will be maintained with the

 5   signature.

 6          I assume there are no other issues to take up.

 7   If not, we will be in recess.

 8          Thank you.

 9          MR. BOONE:  Thank you, Your Honor.

10          MS. LEDGEWOOD:  Thank you, Your Honor.

11          Good afternoon.

12          THE COURT:  Yes, ma'am.

13       (Whereupon, Day 2 of the Jury Trial proceedings

14   concluded at 3:15 p.m.)

15                    C E R T I F I C A T E

16       I, Peggy W. Weber, certify that the foregoing is a

17   correct transcript from the record of proceedings in the

18   above-entitled matter.

19

20

     August 11, 2019                s/Peggy W. Weber
21       DATE                        PEGGY W. WEBER, RPR

22

23

24

25