UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,    ) Lexington Criminal
                             ) Action No. 18-20
        Plaintiff,           )
                             ) At Lexington, Kentucky
-vs-                         )
                             )
SCOTT W. SULIK,              ) May 24, 2019
                             ) 10:00 a.m.
        Defendant.           )


TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE


Appearances of Counsel:

On behalf of Plaintiff:      ANDREW T. BOONE, ESQ.
                             Assistant U.S. Attorney
                             260 West Vine Street
                             Suite 300
                             Lexington, Kentucky  40507

On behalf of Defendant:      PAMELA S. LEDGEWOOD, ESQ.
                             271 West Short Street
                             Suite 403
                             Lexington, Kentucky  40507

Court Reporter:              PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814


Proceedings recorded by mechanical stenography,
transcript produced by computer.

1          (Whereupon, the Sentencing Hearing proceedings

2    commenced on Friday, May 24, 2019, at 10:00 a.m., on the

3    record in open court, as follows.)

4                THE COURT:  All right.  Thank you.

5                Madam Clerk, if you would call the matter

6    scheduled for 9:30, please.

7                THE CLERK:  Yes, Your Honor.

8                Lexington Criminal Action Number 18-20,

9    United States of America versus Scott W. Sulik, called for

10   sentencing.

11               THE COURT:  Thank you.

12               If counsel would state their appearances,

13   please.

14               Mr. Boone.

15               MR. BOONE:  Good morning, Your Honor.

16               Andy Boone for the United States.

17               THE COURT:  Good morning.  Thank you.

18               Ms. Ledgewood.

19               MS. LEDGEWOOD:  Good morning, Your Honor.

20   Thank you.

21               Pam Ledgewood for Mr. Scott Sulik who sits to my

22   left.

23               THE COURT:  All right.  Thank you.

24               This matter is scheduled for a sentencing

25   hearing this morning.

1              Before we proceed with the hearing, let me first

2   confirm that Mr. Sulik has had the opportunity to review

3   his presentence report and discuss it with counsel.

4              Is that correct?

5              MS. LEDGEWOOD:  He has had an opportunity to

6   review it, Your Honor.  For -- he has declined to discuss

7   it much with me.

8              THE COURT:  All right.  Did he have the

9   opportunity to do so and declined?

10             MS. LEDGEWOOD:  Yes, sir.

11             THE COURT:  All right.

12             MS. LEDGEWOOD:  Yes, sir.

13             THE COURT:  In that event, we will proceed under

14  Rule 32.

15             There are no objections to the presentence

16  report; and, therefore, I will adopt the findings that are

17  contained in the report, as well as the guideline

18  calculations.  I will review those with the parties in

19  just a moment.

20             Before I do so, let me remind counsel that if

21  there are any additional factors that you would like to

22  call to my attention that are relevant to sentencing under

23  Title 18, Section 3553, please do so during allocution in

24  the case.

25             Before we -- before I review the calculations, I

1  want to confirm again there are no objections to the

2  report.

3          Is that accurate?

4          MR. BOONE:  That's correct, Your Honor.

5          THE COURT:  All right.  Thank you.

6          Ms. Ledgewood.

7          MS. LEDGEWOOD:  Your Honor, it is my

8  understanding from Mr. Sulik that he does not wish me to

9  advocate in any way on his behalf today.  So I feel

10 somewhat restricted by his views.

11         I have no objections as his counsel to bring to

12 the --

13         THE COURT:  All right.

14         MS. LEDGEWOOD:  -- Court's attention.

15         THE COURT:  All right.  Let me review the

16 guideline calculations.  The guideline calculations begin

17 at paragraph 9 of the presentence report, which indicates

18 that the 2018 edition of the guideline manual has been

19 used.

20         The base offense level is a level 18.  There's a

21 two-level increase under 2G2.2(b)(2) because the

22 offense -- the material involved a prepubescent minor did

23 not attain the age of 12 years, and a two-level increase

24 based on use of a computer under Section 2G2.2(b)(6).

25 That results in an adjusted offense level of 22.

1          The defendant is not entitled to reduction for

2    acceptance of responsibility having proceeded to trial and

3    having been convicted.

4          There's no adjustment for obstruction of --

5    excuse me, there's no adjustment for obstruction of

6    justice in the case.  Although, it does appear that the

7    defendant may be subject to that enhancement based upon

8    his testimony that's reflected in -- at pages 101, 102,

9    and 110 of the transcript of the trial, but the parties

10   may address that matter during allocution in the case.

11         While notice has not been given of an adjustment

12   for obstruction, that is a factual matter that the Court

13   may consider under 3553.

14         Regarding the defendant's criminal history, it

15   is contained in part (b) of the report, beginning at

16   paragraph 21.

17         The defendant has four criminal history points

18   that would place him in Criminal History Category III for

19   purposes of calculating the nonbinding guideline range in

20   the case, which would be a range of 51 to 63 months.

21         The guideline range for supervision is

22   five years to life, as reflected in paragraph 62.

23         And the fine range in the case is a range of

24   15,000 to $150,000.  That is reflected in paragraph 58.

25         And those are the guideline calculations that

 1  have been adopted in the case.

 2          There are no motions to be taken up; and,

 3  therefore, we'll proceed with allocution.

 4          I'll again confirm, Ms. Ledgewood, that you do

 5  not wish to make a statement or argument on the

 6  defendant's behalf?

 7          MS. LEDGEWOOD:  It's -- it is not a question of

 8  what I wish.  I have --

 9          THE COURT:  Yes, ma'am.  You have been

10  instructed.

11          MS. LEDGEWOOD:  I don't mean that in a

12  disrespectful manner to Your Honor.  I just say I'm

13  prepared to make comments in the event that Mr. Sulik has

14  changed his mind --

15          THE COURT:  All right.

16          MS. LEDGEWOOD:  -- about that.  But at this

17  point I feel that it is his request that if there is

18  allocution from the defense to be made, that he do it

19  himself.

20          THE COURT:  All right.  I'll give him that

21  opportunity.

22          Yes, sir, Mr. Sulik.

23          DEFENDANT SULIK:  I would like to voice for the

24  record that I look forward to testifying against this

25  Court for violation of my Constitutional rights against

1    the Federal Bureau of Investigation, the Capitol Police,

2    and members of the -- my last lawyer and my current lawyer

3    that's sitting to the right of me.  And I look forward

4    to my testimony and access to information that I have

5    been unable to obtain because I've been incarcerated the

6    whole time, and my wife does not have access to it that

7    will vindicate me and show extreme bias against me in my

8    case and over -- overstepped by this Court and this

9    Eastern District.

10                   Thank you.

11                   THE COURT:  All right.  Mr. Boone.

12                   MR. BOONE:  Thank you, Your Honor.

13                   The guideline range is 51 to 63 months as you

14   stated.  A recommendation as a sentence at or above the

15   midpoint of that range, which the midpoint would be

16   57 months.

17                   And further, a recommendation would be that that

18   sentence be imposed fully consecutive to the sentence for

19   the previous cyber-stalking conviction.

20                   This recommendation is based on the nature and

21   circumstances of the offense, and that he promote respect

22   for the law primarily, among the other 3553(a) factors.

23                   Any -- as far as the offense goes, the instant

24   offense, any child pornography offense is serious, and the

25   guideline range certainly reflects that.  My -- I

1   personally don't prosecute a lot of these cases, but my

2   understanding is that among the spectrum of these types of

3   cases, the possession of three images is towards the less

4   egregious end.

5           THE COURT:  Yes, sir.

6           MR. BOONE:  And so that may be a factor the

7   Court looks at in deciding to -- in deciding to impose a

8   sentence within the guideline range.

9           But I submit there is no reason or need to go

10  below the guideline range given the nature of the offense,

11  given the small number of the images.

12          The need to promote respect for the law is

13  important here.  Mr. Sulik, as the Court noted, testified

14  at trial.  On the three transcript pages that the Court

15  referenced, Mr. Sulik specifically denied knowingly

16  possessing the images on the electronic devices.

17          THE COURT:  If the jury had agreed with his

18  testimony, or had accepted his testimony, he could not

19  have been convicted; correct, because knowledge is an

20  element of the offense, and he denied, specifically

21  denied, knowledge.  So it's a material issue in the case.

22          MR. BOONE:  It's correct that the knowledge

23  issue is an essential factual predicate of the jury's

24  verdict, and so the jury necessarily disagreed with

25  Mr. Sulik on that point when returning its verdict.

1          I did not seek an enhancement for obstruction of

2 justice because I think that beyond the mere finding of a

3 falsity, there's also required findings on materiality and

4 willfulness of the other elements of perjury.

5          THE COURT:  Right.

6          MR. BOONE:  Given the scope and context of the

7 overall testimony, the issue of willfulness is certainly

8 possible but maybe a little bit unclear.

9          As far as materiality, I think there are two

10 issues there.  Was it a material component of the jury's

11 verdict?  It certainly was.

12          Was it also a statement per the pattern jury

13 instructions on false statements, offenses, was it a

14 statement that had the natural tendency to influence the

15 jury?  Again, not as clear to me.  I would submit the jury

16 really didn't have any trouble at all overcoming that,

17 that particular obstacle.  There was ample evidence

18 presented that Mr. Sulik knowingly possessed these images

19 in question.

20          THE COURT:  Well, let me ask you this question,

21 this hypothetical.  Let's say that there's a -- any

22 defendant in any case and the evidence is strong against

23 that defendant, and that defendant decides nothing to

24 lose, I'll get on the witness stand, and I'll just deny

25 everything.  I'll deny that I was there.  Whatever the

10

1  elements are, I'll just deny all of it, and maybe one of
2  those jurors will believe me, and I can get an acquittal
3  through perjured testimony.  That's one hypothetical.

4        The second hypothetical is it's a really close
5  case.  The defendant decides he'll do the same thing.
6  He'll get on the witness stand, and he'll deny a material
7  element that has to be shown to obtain a conviction.

8        There's a conviction in both cases.  Does the
9  enhancement apply in one and not the other?

10        MR. BOONE:  The enhancement certainly could
11  apply in both, and I'm not taking the position that in
12  every case where the evidence is overwhelming the
13  enhancement would not apply in -- where the defendant
14  simply takes the stand and denies a single element.

15        What I'm saying is that materiality is -- of
16  course, it's not a black and white issue.  It's a sliding
17  scale whether a statement is more or less material.

18        In this case given the overall trial and the
19  evidence presented and the narrow scope of the denials on
20  the stand, materiality is toward the lower end of that
21  scale.

22        It's mindful of the Sixth Circuit's admonition
23  that not every defendant who takes the stand and is
24  acquitted -- or is convicted will receive that
25  enhancement.

1           The decision that I made was we're not going to

2   seek that enhancement here.  Candidly, there will be other

3   cases like this one, or in some ways, where I'll take an

4   opposite position that enhancement would apply.

5           Now, all that said, the testimony was still at

6   odds with the fundamental component of the jury's verdict.

7   The Court is entitled to find that testimony false, and

8   the Court is entitled to take that into account under

9   3553.

10          And so that's a -- the falsity of that testimony

11  is something that I submit should pull the sentence up

12  within the guideline range to a sentence at or above the

13  midpoint.

14          I just want to briefly address the issue of

15  whether the sentence should run consecutively to the

16  sentence imposed last year for the cyber-stalking offense.

17          THE COURT:  All right.

18          MR. BOONE:  The guidelines 5G1.3(b) as I read

19  them give the Court substantial discretion in this case.

20  And I question the main concern is whether to -- or simply

21  to impose a reasonable punishment for the instant crime.

22  The cyber-stalking conviction has nothing to do with the

23  instant crime.  What we have here is an offense that

24  involves qualitatively different conduct, totally

25  different set of victims, totally different type of harm.

1          And so I submit that the previous sentence

2   shouldn't be really factored in at all to the current

3   sentence, and they should run completely consecutively if

4   that's an issue.

5          So for those reasons we ask for a sentence at

6   least at the midpoint of the guideline range.

7          THE COURT:  All right.  Thank you.

8          Ms. Ledgewood, if you have any other position to

9   state, after you confer with Mr. Sulik, you may do so.

10          MS. LEDGEWOOD:  If I may for just a moment,

11   Your Honor.

12          THE COURT:  Yes, ma'am.

13          DEFENDANT SULIK:  Your Honor, having my

14   appearance as representation with my last experience with

15   Rachel Yavelak who lied to me multiple times is actually

16   why I took the plea deal on the Gutierrez case who

17   insulted General Kelly and his family after losing their

18   son serving our country, spending decades to achieve,

19   becoming a four-star general, told me under multiple times

20   that the Rand Paul case is being tried as a -- under state

21   guidelines, not federal guidelines.

22          Holding all of the guns that I ever bought and

23   sold in my life, they were all legal and legit, and using

24   that to try to shoehorn me -- shoehorn me into another

25   10 years for doing -- I've done no crime.

1           You know, what really is the saddest thing about
2    everything there's 330 million Americans in this country,
3    and I'm the only one that stood up to the parasite who
4    insulted General Kelly and his family using his political
5    stature to do it on national media.
6           And then the day I get sentenced you gave me a
7    six-point enhancement to give me more time for it, which
8    now that my score, which was I, which shouldn't probably
9    have even been a I, I got a IV.  Now, the same Capitol
10   Police that came here two other times when I had the
11   second Judge, Judge Hood, had nothing to even bring --
12   bring any evidence against me, and now the same
13   Capitol Police that investigated Debbie Wasserman Schultz
14   are here with this evidence, which my lawyer next to me
15   asked the expert where they came from, and he couldn't say
16   where they came from, and then she never pressed the
17   issue.
18           That's my lawyer, the same lawyer that when we
19   had our 45-minute discussion on all of these things, why I
20   went to the hole, which I still don't know who ordered me
21   to the hole for eight days with no communication after I
22   countered Prosecutor Boone here to my right through
23   Rachel Yavelak, no phone, no nothing, for eight days
24   because I exercised my Constitutional right at the tone
25   I'm speaking to you now over the phone to her, she quits

1   the next day.  We've got two agents in there at 11:00 a.m.

2   in an intimidating fashion reading my rights, sitting

3   knee to knee with me in that little room where we have

4   meetings with lawyers.  And then I'm left in there 22

5   more days.  I'm left in there a month, okay, kind of like

6   Paul Manafort, George Papanopoulos.

7            THE COURT:  Papadopoulos.  You mispronounced his

8   name.

9            DEFENDANT SULIK:  Or not -- or however I

10  pronounced his name.

11           THE COURT:  It's Papadopoulos, not Papanopoulos.

12           DEFENDANT SULIK:  So now I have these images,

13  which I have no idea where they came from, I'm walking

14  around with them apparently in my phone and not knowing

15  it.

16           And if you know anything about what I do, I'm

17  very careful about because I have money on my computer to

18  trade with.  I'm very careful about what I do with my

19  computer because of the type of software, which

20  hallelujah, thanks to her.  It's the only good thing I

21  got from her.  That UMT trade file exists, two-year track

22  record of me trading futures in oil, bonds, and the

23  S&P 500, doing over 1,000 percent a year.  And I can't get

24  any acknowledgment of that.  I can't find out who sent me

25  to the hole.  Did Jailer Rankin?  Did somebody in the jail

1    say let's just put him in the hole and violate my

2    Consti -- is it against the Constitution for me to counter

3    the prosecutor through my attorney?  I just wondered if it

4    is against the Constitution.

5              Because a lot of men and women died fighting for

6    their Constitution, and then I have to sit here and listen

7    to the same organization from D.C. that covered for

8    Debbie Wasserman Schultz whose technicians had secret

9    clearances higher than I ever had when I was in the

10   Marine Corp who had access to some of the most delicate

11   secrecy of our country, and they're getting paid more than

12   Congress makes, and they're -- and they're sending the

13   money back to India or Pakistan, and they have ties to

14   Muslim brotherhood.  So I have a lot of faith in the

15   Capitol Police.

16             And in case anybody hasn't watched the news and

17   what's going on with Attorney General Bill Barr, there is

18   an investigation going on at the highest levels of the

19   FBI.  The FBI doesn't go out -- the people who run the FBI

20   they have soldiers within the FBI who are biased in D.C.

21   who carry out their agenda.

22             And Gutierrez has ties with the intel committee

23   through Adam Schiff and everybody else.  And I intend to

24   prove that.

25             And I intend to testify against everybody who's

 1   gone against my Constitutional rights.  And I've got a

 2   list of names in my head of other cases that I've come

 3   across of men, young men, who have been basically scared

 4   psychologically with all this time.  It's a consistent

 5   pattern of the tactics that the lawyers use, and it's --

 6   and they're going to discover a pattern to it.  And I

 7   can't wait to testify and have that day and be vindicated.

 8            And I want that all on the record because if

 9   Giuliani has my case, and I will be vindicated, and I want

10   people in here to know that.

11            THE COURT:  All right.  Thank you.

12            DEFENDANT SULIK:  Semper Fi.

13            THE COURT:  All right.

14            MS. LEDGEWOOD:  Excuse me, Your Honor.  I

15   withdraw my request to confer with him.  I don't think

16   that he wishes me to --

17            THE COURT:  All right.

18            MS. LEDGEWOOD:  -- do that.

19            THE COURT:  Yes, ma'am.

20            MS. LEDGEWOOD:  Thank you, sir.

21            DEFENDANT SULIK:  You're the one who said I

22   needed a mental evaluation the first day you represented

23   me.

24            THE COURT:  Mr. Sulik, it's now my time to talk.

25   Your time is over.  It's now my time to talk.  Okay?

1           DEFENDANT SULIK:  Yes, sir.

2           THE COURT:  The Court considers a number of

3   factors in determining an appropriate sentence in every

4   case.  I start from the guideline range, and I consider

5   the factors of 3553.

6           Without further deflection, you have been

7   convicted of possessing -- knowingly possessing

8   child pornography.  You testified during trial, and I

9   believe you lied.  You had that child pornography on

10  your devices.

11          DEFENDANT SULIK:  Correct.

12          THE COURT:  You said that you couldn't live with

13  yourself.

14          DEFENDANT SULIK:  I did.

15          THE COURT:  Here you are.

16          DEFENDANT SULIK:  I didn't say --

17          THE COURT:  No, it's not your turn.  It's not

18  your turn to talk.  You've had your full statement.

19          You're convicted of possessing

20  child pornography.  That's who you are.  You may see

21  yourself as some grand figure, but you're a person who

22  possesses child pornography.  That's what you stand

23  convicted of before this Court, and that will be the basis

24  for your sentence.  It's not these other things in which

25  you attempt to deflect the attention to.  It's the fact

1  that you possessed child pornography.

2            Are you the worst child pornographer that I've

3  seen in this court?  No.  You had a few images.  But you

4  stand convicted of that.

5            Now, I do consider the guideline range that

6  provides a starting point.  Your guideline range in this

7  case is 51 to 63 months.  I generally start in the middle

8  of the guideline range when I consider the factors of

9  3553.

10            They do include the circumstances of the

11  offense, as well as the history and characteristics of the

12  defendant.  Yes, you do have some criminal history.  It's

13  reflected in the report.  It's not related to danger

14  against children.  It's related to other matters.

15            But I will include some conditions of

16  supervision when you're released from the period of

17  incarceration, that will provide a measure of protection

18  to children.

19            I also consider in addition to the circumstances

20  of the offense and the history and characteristics that

21  you present, how serious the offense is, the need to

22  promote respect for the law, and to provide proper

23  punishment, or just punishment, for the offense.

24            You claim to promote respect for the law, but

25  you really don't do it.  You make a lot of claims against

1   a lot of people, but you really don't promote respect for

2   the law, and you don't demonstrate it.

3           DEFENDANT SULIK:  I served my country six years,

4   and I love my country.  Your law or America's laws?

5           THE COURT:  The laws of the United States,

6   Mr. Sulik.

7           DEFENDANT SULIK:  That's right.

8           THE COURT:  And they include not possessing

9   child pornography.

10          DEFENDANT SULIK:  That's right.

11          THE COURT:  And that's what we're here about

12  today.  Let me bring you back to that because you seem to

13  forget it.

14          DEFENDANT SULIK:  I'm clear.

15          THE COURT:  I'm sorry?

16          DEFENDANT SULIK:  I said I'm quite aware of

17  that.

18          THE COURT:  You're quite aware that the jury

19  convicted you of that; correct?

20          DEFENDANT SULIK:  Yes, tainted evidence.

21          THE COURT:  The Court also considers deterrence.

22  Probably a sentence within the guideline range would not

23  provide deterrence for this defendant.

24          I do have concerns about protecting the public.

25          I don't believe that there's a need to provide

1  this defendant with any type of educational or vocational

2  training.

3          Perhaps he needs some mental health treatment,

4  but the Bureau of Prisons will be able to make that

5  determination.

6          A sentence within the guideline range would not

7  be an unwarranted disparity.

8          And while I do believe the defendant provided

9  false and misleading testimony during the trial of the

10  case, there's not been an enhancement for obstruction of

11  justice, and I will not increase the sentence for that.

12          Instead, the Court will begin in the middle of

13  the range, 57 months, and the factors that I've just

14  outlined, the 3553 factors, none would support a sentence

15  below that range.  Perhaps others would support a higher

16  sentence.  But all facts being considered in this case, I

17  will impose a sentence at the middle of the guideline

18  range of 57 months.

19          And as indicated, I will also impose the

20  conditions for sex offenders that have been adopted in

21  this district in which I will outline at this time.

22          And pursuant to the Sentencing Reform Act of

23  1984, as modified by the decisions in Booker and Fanfan, I

24  do find the following sentence to be sufficient but not

25  greater than necessary to meet all of the purposes of

1  Title 18, Section 3553(a).

2          And, therefore, it will be the judgment of the

3  Court that the defendant, Scott W. Sulik, will be

4  committed to the custody of the Bureau of Prisons for a

5  term of 57 months, to run consecutively to the sentence

6  imposed in Lexington Criminal Action Number 18-CR-19.

7          And the Court determines that it is necessary to

8  run the sentences consecutive to provide proper deterrence

9  for this defendant, as well as protection of the public,

10  and it will produce a just sentence under those

11  circumstances.

12          Upon release from imprisonment, he will be

13  placed upon supervision for a term of 15 years.

14          And within 72 hours of release from the custody

15  of the Bureau of Prisons, he must report in person to the

16  probation office in the district in which he is released.

17          While on supervised release, he may not commit

18  another federal, state, or local crime.

19          He must comply with the mandatory and the

20  standard conditions adopted by the Court and that will be

21  set forth in the judgment and commitment order.

22          The special conditions will include that the

23  defendant may not purchase, possess, use, distribute, or

24  administer any controlled substance or paraphernalia

25  relating to controlled substances, except as prescribed by

1   a physician.

2           And he may not frequent places where controlled

3   substances are illegally sold, used, distributed, or

4   administered.

5           He must also provide the probation office with

6   access to any requested financial information.

7           He must provide the probation office within

8   seven days of release from the custody of the Bureau of

9   Prisons with a written report in a form the probation

10  office directs listing each and every prescription

11  medication in his possession, custody, or control.

12          The list includes but is not limited to any

13  prescription medication that contains a controlled

14  substance, and it includes all current, past, and

15  outdated, or expired prescription medications in his

16  possession, custody, or control at the time of the report.

17          He must notify the probation office immediately

18  if he receives a prescription for medication containing a

19  controlled substance during the period of supervised

20  release, and he must provide the probation office with

21  such documentation and verification as the probation

22  office may reasonably request, and also in a form that it

23  directs.

24          And he must comply strictly with the orders of

25  any physician or other prescribing source with respect to

1  the use of all prescription medications.

2          And he must report any theft or destruction of

3  any prescription medication to the probation office within

4  72 hours.

5          Mr. Sulik will also be required to participate

6  in a program for treatment of mental health or sexual

7  disorders, and he must undergo a sex offender risk

8  assessment, psycho-sexual evaluation, and/or other

9  evaluation as needed.

10         He must be -- he will be subject to periodic

11 polygraph examinations and computer voice stress analysis

12 testing.  That will be at the discretion and direction of

13 the probation office.

14         And he must follow the rules and regulations of

15 the sex offender treatment program as implemented by the

16 probation office.

17         His residence and employment must be

18 pre-approved by the probation office in compliance with

19 state and local law.

20         He may not frequent, volunteer, or work at

21 places where children under the age of 18 congregate, and

22 that includes playgrounds, parks, day care centers, public

23 swimming pools, youth centers, and video arcade

24 facilities.  And that is unless the work is approved in

25 advance by the probation office.

1           He must not associate or have verbal telephonic

2    or electronic communications with any person under the age

3    of 18 without permission of the probation office, and this

4    does not include persons under the age of 18, such as

5    ticket vendors, cashiers, waiters and waitresses and the

6    like with whom he must deal in order to obtain usual and

7    ordinary commercial services.

8           He must not possess, view, listen to, or go to

9    locations where any form of pornography,

10   sexually-stimulating performances, or sexually-oriented

11   materials, items, or services are available.

12          And he may not possess or use a device capable

13   of creating pictures or videos unless he receives the

14   approval of the probation office.

15          He may not rent or use a post office box or

16   storage facility without the approval of the probation

17   office.

18          And he must register as a sex offender as

19   prescribed by state law.

20          There are restrictions on computers.  The

21   defendant must not purchase or use a computer or any

22   device with access to any online computer service at any

23   location, including place of employment, without the prior

24   written approval of the probation office.

25          This includes any Internet service provider,

1  bulletin board system, or any other public or private

2  network or email system.

3         And he must consent to the probation office

4  conducting unannounced examinations of his computer

5  system, and any internal and external storage devices,

6  which may include retrieval and copying of all memory

7  from all hardware and software and the removal of such

8  systems for the purpose of conducting a more thorough

9  inspection.

10        And the defendant must consent to having

11 installed on his computer any hardware or software to

12 monitor his computer use or to prevent access to

13 particular materials.

14        And he must consent to periodic inspection of

15 such installed hardware and software to ensure that it's

16 functioning properly.

17        He must also provide the probation office with

18 accurate information about his entire computer system.

19 That includes the hardware and software and any internal

20 or external storage devices.

21        He must provide all passwords for which he would

22 use, and he must abide by the computer restriction and

23 monitoring program.

24        Based upon the nature of the offense of

25 conviction, the Court will include a search condition.

1          The defendant will be required to submit his

2   person, residence, office, vehicle, or any property under

3   his control to a search conducted by the probation office.

4   The failure to submit to a search would be grounds for

5   revocation of supervision.

6          He must inform any other residents that the

7   premises would be subject to a search according to this

8   condition.

9          The defendant must also provide the probation

10  office with access to any requested financial information.

11  Now, this is included as a means to allow the probation

12  office to monitor purchases of electronic and peripheral

13  devices, as well as any Internet service, either

14  prescribed to or accessed to by the defendant, including

15  the amount paid for Internet services in determining

16  whether it's -- the amount exceeds the approved amount by

17  the probation office, and to determine if he's purchased

18  more electronic devices than he claims to possess.

19          Now, based upon the defendant's current

20  financial situation, I will impose a fine below the bottom

21  of the fine range of 10 percent of the bottom of the

22  range, which would be $1,500.

23          In considering the factors under the sentencing

24  guidelines, I believe that the defendant has the ability

25  to pay a fine.

1           And if he's not able to pay the full amount,

2    then he will be able to pay the amount in monthly

3    payments.

4           He'll be ordered to pay to the United States

5    also a special assessment of $100 based upon the offense

6    of conviction, and he'll be required to pay an additional

7    sum of $5,000 as a special assessment.

8           Under Title 18, Section 3014, I do find that the

9    fine amount, together with the special assessment is

10   within the defendant's ability to pay during the period of

11   incarceration, and also upon release if he is allowed to

12   make monthly payments, which will be set in a subsequent

13   order that will be filed by the Court.

14          Following this proceeding, he'll be remanded

15   back to the custody of the United States Marshal pending

16   designation by the Bureau of Prisons.

17          That will be the sentence of the Court.

18          In just a moment, I will ask the clerk to advise

19   the defendant of his appellate rights.

20          Before I do that, I'll entertain any objections

21   that the parties may have to the sentence that has been

22   announced, first.

23          Second, would be any objections under

24   United States versus Bostic.  Under that decision from the

25   Sixth Circuit, any objections not previously raised would

1   need to be raised at this time so that they may be

2   addressed by the Court to be properly preserved for

3   review on appeal.

4          And finally, if the parties would like the Court

5   to make additional findings to support the sentence that

6   has been announced, I'll do so upon request.

7          Mr. Boone.

8          MR. BOONE:  No objections and no request for

9   additional findings, Your Honor.

10         THE COURT:  All right.  Thank you.

11         Ms. Ledgewood.

12         MS. LEDGEWOOD:  Prior to reading the appellate

13  rights, I just wanted the record to reflect that I will be

14  filing a notice of appeal on his behalf.

15         And then once in the jurisdiction of the

16  Sixth Circuit, I will be filing a motion to withdraw as

17  his counsel at that point and have Sixth Circuit CJA

18  appointed for him.  He already has one appellate lawyer

19  who's an outstanding lawyer working for him in his appeal

20  of the sentence on the previous case.

21         THE COURT:  All right.

22         MS. LEDGEWOOD:  So I did just want the record to

23  reflect, I will be -- I know he no longer wants my

24  services, but I think that I'm responsible for performing

25  that last service for him, and I will.

1        And I'm aware of no other findings that need to

2   be made, nor no objections.

3        Obviously, he may know --

4        THE COURT:  All right.

5        MS. LEDGEWOOD:  -- something about that, but I

6   don't know.  But as his counsel, nothing further,

7   Your Honor.

8        THE COURT:  All right.  Thank you.

9        Madam Clerk, if you would please advise

10  Mr. Sulik of his appellate rights.

11       THE CLERK:  Yes, Your Honor.

12       You're notified by this Court that you have a

13  right to appeal your case to the Sixth Circuit Court of

14  Appeals, which on proper appeal will review this case and

15  determine that there has or has not been an error of law.

16       If you're unable to pay for the cost of the

17  appeal, you have a right to apply for leave to appeal in

18  forma pauperis, which means you may appeal without paying

19  for it.

20       If you are without the services of an attorney

21  and desire to appeal, upon request the clerk of this Court

22  shall prepare and file forthwith a notice of appeal on

23  your behalf.

24       With few exceptions, this notice of appeal must

25  be filed within 14 days from the date of entry of the

1    judgment.

2           If you do not have sufficient funds to employ an

3    attorney, the Court of Appeals may appoint your present

4    attorney, or another, to prosecute the appeal for you.

5           You may request to be released on a reasonable

6    bond pending appeal.

7           THE COURT:  Mr. Sulik, you're about to be handed

8    what was just read.  Please take a moment to review your

9    appellate rights.

10          After you've assured yourself you understand

11   those rights, if you could sign the original document, and

12   there's a copy that you can keep.

13          If you choose not to sign, you can acknowledge

14   that your refusal -- you can acknowledge your refusal in

15   open court.

16          DEFENDANT SULIK:  I can refuse?  I'm sorry, sir?

17          THE COURT:  You have been advised of your

18   rights, but if you choose not to sign that document that's

19   just been read to you, you can state that in open court,

20   but you can still keep a copy for your records.

21       (Whereupon, the defendant, Scott W. Sulik, signs the

22   form.)

23          MS. LEDGEWOOD:  That's returned to the Court.

24   That's your copy.  You may keep that for your records.

25          DEFENDANT SULIK:  Okay.

1              MS. LEDGEWOOD:  Oh, I'm sorry.  Your Honor,

2    should I still sign as his attorney?

3              THE COURT:  Yes, ma'am.

4              MS. LEDGEWOOD:  Okay.

5              THE COURT:  Until you've been relieved --

6              MS. LEDGEWOOD:  Thank you, sir.

7              THE COURT:  Until you've been relieved as

8    counsel of record.

9              MS. LEDGEWOOD:  Thank you, sir.

10             Thank you, Your Honor.

11             THE COURT:  All right.  Thank you.

12             Let's see, our next hearing was originally

13   scheduled for 10:15.  We'll call that up in approximately

14   five minutes.

15             We'll be in recess until that time.

16        (Whereupon, the Sentencing Hearing proceedings

17   concluded at 10:40 a.m.)

18                  C E R T I F I C A T E

19        I, Peggy W. Weber, certify that the foregoing is a

20   correct transcript from the record of proceedings in the

21   above-entitled matter.

22

23

     August 8, 2019                    s/Peggy W. Weber

24       DATE                     PEGGY W. WEBER, RPR

25